[No. D047249. Fourth Dist., Div. One. Jan. 31, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
STANLEY RAYMOND FLORES, Defendant and Appellant.

**COUNSEL**

Marianne Harguindeguy Cox, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert P. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Peter Quon, Jr., and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HUFFMAN, Acting P. J.**—Stanley Raymond Flores appeals a judgment following his jury convictions on 16 counts of lewd acts on a child (Pen. Code, § 288, subd. (a))[1] and three counts of aggravated sexual assault on a child (§ 269). On appeal, Flores contends the trial court erred by (1) not instructing with CALJIC No. 2.90 on the reasonable doubt standard of proof; and (2) omitting four counts from its instructions with CALJIC Nos. 2.02 and 3.31. Because the jury in this case was *not* instructed Flores could not be found guilty unless all of the elements of the charged offense(s) were proved by the prosecutor beyond a reasonable doubt, Flores was denied his federal constitutional right to a jury verdict of guilty beyond a reasonable doubt and therefore his convictions must be reversed.

## FACTUAL AND PROCEDURAL BACKGROUND

John C. and Irma C. lived in a home with their three children, N.C. (born in 1995), A.C. (born in 1999), and J.C. (born in 2000). Flores is Irma's father and the grandfather of her three children. From late 2001 through June 2004, Flores intermittently lived in a detached game room between John and Irma's home and their garage.[2] In June 2004, Flores permanently moved out of the game room and into a residence in Mexico.

On July 8, 2004, N.C. was crying and informed her parents she had done bad things with Flores. Because N.C. was having difficulty expressing herself, John gave her a piece of paper and a pen and asked her to write down what bad things had occurred. On that paper (later admitted in evidence at trial), N.C. described how Flores orally copulated her and made her orally copulate him. She also described how Flores told her to lick her brother's privates, which she did. The next morning, John called the sheriff's department.

On July 10, A.C. told her mother that Flores had also touched her. On July 20, both girls were interviewed at Children's Hospital and N.C. was physically examined. Each of them described many instances of being molested by Flores.

---

[1] All statutory references are to the Penal Code.

[2] Apparently during this time, Flores would periodically move out and temporarily live in a trailer park before returning to the game room.

Shortly after July 8, Irma called her brother Stanley to inform him of what had occurred. Stanley told her he also had been molested by Flores as a child. On September 10, detectives had Stanley wear a tape recorder while questioning Flores about those past incidents. For the most part, Flores claimed he could not remember those incidents. Stanley also told Flores what N.C. said he (Flores) had done to her. Flores denied doing anything "to the girls."

An information charged Flores with 16 counts of lewd acts on a child (counts 1–9 & 13–19) and three counts of aggravated sexual assault on a child (counts 10–12). Counts 1 through 12 were alleged to have been committed against N.C. between May 31, 2002, and August 31, 2004. Counts 13 through 16 were alleged to have been committed against A.C. between February 23, 2003, and August 31, 2004. Counts 17 through 19 were alleged to have been committed against Stanley between January 1, 1988, and December 19, 1990. As to each of the 19 counts, the information alleged Flores had substantial sexual contact with the victims (§ 1203.066, subd. (a)(8)). As to each of counts 1 through 16, the information also alleged Flores committed the offense against more than one victim within the meaning of section 667.61, subdivisions (b), (c), and (e).

At trial, the alleged victims (i.e., N.C., A.C., and Stanley) testified regarding the acts Flores allegedly committed against them. The jury found Flores guilty on all counts and found true all of the allegations. The trial court sentenced Flores to an indeterminate term of 240 years to life plus a determinate term of 12 years.

Flores timely filed a notice of appeal.

## DISCUSSION

## I

### *JURY INSTRUCTIONS ON REASONABLE DOUBT GENERALLY*

The first issue we must address is whether to treat the court's failure to include an instruction on reasonable doubt in its charge to the jury as structural error or whether it should be reviewed under the standard in *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824] (*Chapman*). We conclude the *Chapman* standard should be applied in this case.

To place the circumstances in this case in proper perspective, a detailed discussion of the progression of case law regarding instructions on reasonable doubt and the applicable standard of reversible error is warranted.

■ In *In re Winship* (1970) 397 U.S. 358 at page 364 [25 L.Ed.2d 368, 90 S.Ct. 1068], the United States Supreme Court held: "[T]he Due Process Clause [of the Fifth Amendment of the United States Constitution] protects the accused against conviction except upon *proof beyond a reasonable doubt*." (Italics added.)

■ In *People v. Vann* (1974) 12 Cal.3d 220 [115 Cal.Rptr. 352, 524 P.2d 824] (*Vann*), the California Supreme Court concluded the trial court erred by failing to instruct sua sponte on the presumption of innocence and that the prosecution had the burden of proving the defendants' guilt beyond a reasonable doubt (i.e., instruction with CALJIC No. 2.90).[3] (*Vann, supra,* 12 Cal.3d at pp. 225–226.) *Vann* rejected the contention that the jury was adequately instructed on reasonable doubt even though it was instructed that circumstantial evidence could constitute sufficient proof if " 'each fact which is essential to complete a set of circumstances necessary to establish a defendant's guilt has been proved beyond a reasonable doubt.' "[4] (*Id.* at p. 226.) *Vann* stated: "Although [that instruction on circumstantial evidence] states, albeit indirectly, that an accused cannot be convicted on circumstantial evidence except where such evidence proves the issue beyond a reasonable doubt, it fails to tell the jurors that a determination of guilt resting on direct testimony must also be resolved beyond a reasonable doubt." (*Ibid.*) Because

---

[3] CALJIC No. 2.90 currently provides: "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether [his] [her] guilt is satisfactorily shown, [he] [she] is entitled to a verdict of not guilty. This presumption places upon the People the burden of proving [him] [her] guilty beyond a reasonable doubt. [¶] Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge." The Judicial Council of California Criminal Jury Instructions (2006) CALCRIM No. 220, approved for use as of January 1, 2006, *after* the trial in this case, provides a substantially similar instruction on the presumption of innocence and reasonable doubt standard of proof.

[4] *Vann* stated: "[T]he People contend, however, that the failure to give the standard instruction is not prejudicial error where the point is otherwise covered and the jury is aware that the People are required to prove the defendants guilty beyond a reasonable doubt. In support of their proposition the People rely on an instruction on circumstantial evidence by which the jurors were told they could not find defendants guilty 'based on circumstantial evidence unless the proved circumstances are not only consistent with the theory that the defendant is guilty of the crime, but cannot be reconciled with any other rational conclusion and each fact which is essential to complete a set of circumstances necessary to establish a defendant's guilt has been proved beyond a reasonable doubt.' " (*Vann, supra,* 12 Cal.3d at p. 226.)

the prosecution depended in large part on direct, rather than just circumstantial, evidence, the instruction on circumstantial evidence did not "[import] a need for the same degree of proof where the crime is sought to be established by direct evidence" and therefore could be interpreted by jurors as requiring a lesser degree of proof where evidence is direct. (*Id.* at pp. 226–227.) Also, the court rejected the contention that an instruction regarding character evidence was sufficient to inform the jurors of the reasonable doubt standard of proof.[5] (*Id.* at p. 227.) *Vann* reasoned: "Although the jury heard both favorable and adverse testimony regarding the character of the defendants, this instruction did not expressly tell them that a reasonable doubt based upon such testimony would necessitate acquittal nor did it assist them in evaluating issues or conflicts other than character." (*Ibid.*) *Vann* concluded: "The foregoing references to reasonable doubt in isolated applications of that standard of proof fall far short of apprising the jurors that defendants were entitled to acquittal unless each element of the crimes charged was proved to the jurors' satisfaction beyond a reasonable doubt buttressed by additional instructions on the meaning of that phrase." (*Ibid.*, fn. omitted.) *Vann* noted that the trial court's instruction regarding the reasonable doubt standard of proof that it gave jury panel members during jury selection was insufficient to cure the court's instructional error.[6] (*Vann, supra,* 12 Cal.3d at p. 227, fn. 6.) *Vann* further noted that although the closing arguments of defendants' counsel advised the jurors that to find the defendants guilty they had to find the elements of the crimes were proved beyond a reasonable doubt, those closing arguments did not cure the court's instructional error. (*Ibid.*) It reasoned: "In its final charge the court made it clear that the jurors were to follow the law as explained by the court, and were not to follow rules of law stated in argument but omitted from the instructions." (*Ibid.*) Finally, regarding the applicable standard of reversible error, *Vann* cited *In re Winship, supra,* 397 U.S. 358 and concluded the "reasonable-doubt standard of proof in criminal proceedings is now recognized as rooted in the federal Constitution." (*Vann, supra,* at pp. 227–228.) Accordingly, *Vann* applied the standard of reversible error set forth in *Chapman, supra,* 386 U.S. 18 at page 24, and concluded the trial court's instructional error was prejudicial and required reversal of the appealed orders because the *Vann* court could not conclude

---

[5] The character evidence instruction stated: " '[E]vidence of good character may be sufficient to raise a reasonable doubt whether a defendant is guilty, which doubt otherwise would not exist.' " (*Vann, supra,* 12 Cal.3d at p. 227.)

[6] *Vann* noted: "[T]he jury panel was instructed prior to the selection of jurors that it would be 'incumbent . . . upon the People to prove the allegations as to each defendant, and to prove them beyond a reasonable doubt, to a moral certainty, before you would be entitled to return a guilty verdict.' " (*Vann, supra,* 12 Cal.3d at p. 227, fn. 6.) Noting that final jury instructions were not give until 16 days later and included, inter alia, an instruction that the jury " '*must follow the law as I state it to you,*' " *Vann* stated: "In net effect the jurors were given to understand that they had received a self-contained, complete statement of the law they were to follow." (*Ibid.*)

"the omission of the vital instruction was harmless beyond a reasonable doubt." (*Vann, supra*, at p. 228.)

In *People v. Elguera* (1992) 8 Cal.App.4th 1214 [10 Cal.Rptr.2d 910] (*Elguera*), the First District Court of Appeal considered circumstances similar to those in *Vann* in which the trial court omitted an instruction on the reasonable doubt standard of proof (i.e., CALJIC No. 2.90) in its predeliberation, or final, jury instructions. (*Elguera, supra*, at pp. 1216, 1218–1220.) In *Elguera*, as in *Vann, supra*, 12 Cal.3d 220, the trial court instructed the jury panel members during jury selection on the reasonable doubt standard of proof. (*Elguera, supra*, at pp. 1217–1218, 1222.) Also, in *Elguera*, as in *Vann*, the trial court gave CALJIC No. 2.01 on circumstantial evidence as part of its final jury instructions.[7] (*Elguera, supra*, at p. 1218.) Finally, in *Elguera*, both counsel in closing arguments repeatedly referred to the reasonable doubt standard of proof. (*Id.* at pp. 1218–1219.) However, in *Elguera*, unlike in *Vann*, a *full* instruction on the reasonable doubt standard of proof (i.e., CALJIC No. 2.90) was given during jury selection which occurred on the *same day* as the trial and jury deliberations. (*Elguera, supra*, at pp. 1217, 1221.) Furthermore, unlike in *Vann*, the prosecutor's evidence on the crucial disputed issue was entirely circumstantial. (*Elguera, supra*, at p. 1221.) Finally, unlike in *Vann*, before counsels' closing arguments the trial court reminded the jury that the prosecutor had the burden of proof. (*Elguera, supra*, at p. 1221.) Citing *Vann, Elguera* stated: "We think it clear the court had a sua sponte duty to instruct the jury on these fundamental principles [i.e., the presumption of innocence and the reasonable doubt standard of proof], applicable to every criminal case; to do so during the trial rather than during jury selection; and to make the instruction available with other written instructions. [Citations.] The court's omission thus was error." (*Elguera, supra*, at p. 1219.) Following *Vann, Elguera* applied the *Chapman* standard of reversible error. (*Elguera, supra*, at p. 1220.) Although *Elguera* distinguished its circumstances from those in *Vann* based on the differences discussed *ante*, the *Elguera* court nevertheless concluded it was not convinced beyond a reasonable doubt that the error had no effect on the verdict. (*Elguera, supra*, at p. 1222.) Accordingly, it reversed the judgment. (*Id.* at p. 1224.)

In *Sullivan v. Louisiana* (1993) 508 U.S. 275 [124 L.Ed.2d 182, 113 S.Ct. 2078] (*Sullivan*), the United States Supreme Court addressed the question of whether a constitutionally *deficient definition* of the reasonable doubt standard of proof could constitute harmless error. (*Id.* at pp. 276–277.) It noted that the

---

[7] That instruction included the language: " '[E]ach fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. [¶] In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance upon which such inference necessarily rests must be proved beyond a reasonable doubt. . . .' " (*Elguera, supra*, 8 Cal.App.4th at p. 1218.)

Sixth Amendment includes the right to have a jury, rather than a judge, find a criminal defendant guilty. (*Sullivan*, at p. 277.) It further noted the Fifth Amendment's due process clause, which applies to both state and federal criminal proceedings, imposes on the prosecution the burden to prove each element of an offense beyond a reasonable doubt. (*Sullivan*, at pp. 277–278.) Interpreting those constitutional provisions, *Sullivan* stated: "It is self-evident, we think, that the Fifth Amendment requirement of proof beyond a reasonable doubt and the Sixth Amendment requirement of a jury verdict are interrelated. It would not satisfy the Sixth Amendment to have a jury determine that the defendant is *probably* guilty, and then leave it up to the judge to determine (as [*In re Winship*, *supra*, 397 U.S. 358] requires) whether he is guilty beyond a reasonable doubt. In other words, the jury verdict required by the Sixth Amendment is a jury verdict of guilty beyond a reasonable doubt." (*Sullivan*, *supra*, at p. 278.) Because the trial court's definition of reasonable doubt was constitutionally deficient, *Sullivan* concluded the defendant was denied his Sixth Amendment right to a jury trial. (*Sullivan*, *supra*, at p. 278.) *Sullivan* then addressed the standard of reversible error to be applied to that federal constitutional error. (*Id.* at pp. 278–282.) It stated: "Although most constitutional errors have been held amenable to harmless-error analysis, see *Arizona* v. *Fulminante*, 499 U.S. 279, 306–307 [113 L.Ed.2d 302, 111 S.Ct. 1246] (1991) . . . , some will always invalidate the conviction. [Citations.] The question in the present case is to which category the present error belongs. [¶] . . . The inquiry . . . is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error. That must be so, because to hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee. [Citations.]" (*Sullivan*, *supra*, at pp. 279–280.) Because of the constitutionally deficient definition of the reasonable doubt standard of proof, *Sullivan* concluded there had been no jury verdict within the meaning of the Sixth Amendment. (*Sullivan*, *supra*, at p. 280.) The court stated: "There being no jury verdict of guilty-beyond-a-reasonable-doubt, the question of whether the *same* verdict of guilty-beyond-a-reasonable-doubt would have been rendered absent the constitutional error is utterly meaningless. There is no *object*, so to speak, upon which harmless-error scrutiny can operate. . . . The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal; it requires an actual jury finding of guilty. [Citation.]" (*Ibid.*) *Sullivan* explained: "[T]he essential connection to a 'beyond a reasonable doubt' factual finding cannot be made where the instructional error consists of a misdescription of the burden of proof, which vitiates *all* the jury's findings." (*Sullivan*, *supra*, at p. 281.) Were the appellate court to apply the *Chapman* standard of prejudicial error, the wrong entity (i.e., a judge, rather

than a jury) would be determining the defendant's guilt. (*Sullivan, supra*, at p. 281.) Furthermore, *Sullivan* concluded that the harmless-error analysis could not apply in its case because the instructional error involved a "structural defect." (*Id.* at pp. 281–282.) *Sullivan* concluded: "The deprivation of that right [i.e., constitutional right to a jury verdict of guilt beyond a reasonable doubt], with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as 'structural error.' " (*Id.* at pp. 281–282.) Accordingly, the court reversed the judgment *without* conducting a *Chapman*-style analysis of harmless error. (*Id.* at p. 282.) *Sullivan* effectively held that a *structural error* in violation of the United States Constitution (e.g., instructional error depriving a defendant of the right to a jury verdict of guilt beyond a reasonable doubt) requires *reversal per se* of the judgment.

■ In *Victor v. Nebraska* (1994) 511 U.S. 1 [127 L.Ed.2d 583, 114 S.Ct. 1239] (*Victor*), the United States Supreme Court, citing *In re Winship, supra*, 397 U.S. 358, reaffirmed that the "government must prove beyond a reasonable doubt every element of a charged offense."[8] (*Victor, supra*, 511 U.S. at p. 5.) However, *Victor* concluded the United States Constitution "neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. [Citation.]" (*Ibid.*) *Victor* stated: "*[S]o long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt* [citation], *the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof.* [Citation.] *Rather, 'taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury.'* [Citation.]" (*Ibid.*, italics added.)

In *People v. Crawford* (1997) 58 Cal.App.4th 815 [68 Cal.Rptr.2d 546] (*Crawford*), the First District Court of Appeal, citing *Sullivan, supra*, 508 U.S. 275, concluded the trial court's error in not instructing on the prosecution's burden of proving the defendant's guilt beyond a reasonable doubt (i.e., omission of CALJIC No. 2.90) was *reversible per se* as structural error. (*Crawford, supra*, at pp. 817, 821–823.) *Crawford* rejected the contention that the trial court's instruction on reasonable doubt during jury selection, but not during trial, avoided the conclusion there was instructional error or that it was a " 'structural defect.' " (*Crawford, supra*, 58 Cal.App.4th at p. 823.) Furthermore, the court rejected the contention that the trial court adequately instructed on reasonable doubt because it instructed with CALJIC No. 2.01 that circumstantial evidence could be sufficient proof if " 'each fact which is essential to complete a set of circumstances necessary to establish the

---

[8] *Victor* alternatively stated: "The [d]ue [p]rocess [c]lause [of the Fifth Amendment] requires the government to prove a criminal defendant's guilt beyond a reasonable doubt . . . ." (*Victor, supra*, 511 U.S. at p. 22.)

defendant's guilt must be proved beyond a reasonable doubt.' "[9] (*Crawford, supra*, at pp. 820, 824–825.)

In *People v. Phillips* (1997) 59 Cal.App.4th 952 [69 Cal.Rptr.2d 532] (*Phillips*), the Second District Court of Appeal, also citing *Sullivan, supra*, 508 U.S. 275, concluded the trial court's error in not instructing on the prosecution's burden of proving the defendant's guilt beyond a reasonable doubt was *reversible per se* as a structural constitutional defect. (*Phillips, supra*, at pp. 954, 956–958.) It rejected the contention that the *Chapman* standard of prejudicial error could apply to that instructional error. (*Phillips, supra*, at pp. 956–957.) *Phillips* rejected the contention that *Sullivan's* reversal per se requirement should not apply to cases in which a trial court wholly omits any instruction on the reasonable doubt standard of proof (versus instructing with a deficient definition of reasonable doubt as in *Sullivan*) *or* to cases in which counsel refers in closing argument to the reasonable doubt standard of proof. (*Phillips, supra*, at pp. 957–958.)

Recently, in *People v. Mayo* (2006) 140 Cal.App.4th 535 [44 Cal.Rptr.3d 497] (*Mayo*), the Second District Court of Appeal took a different approach to a trial court's omission of a CALJIC No. 2.90 instruction on reasonable doubt.[10] The court there found the trial court's mistake was *not* federal constitutional error *if* other instructions, taken as a whole, effectively informed the jury that the prosecution had the burden to prove each element of an offense beyond a reasonable doubt. (*Mayo, supra*, 140 Cal.App.4th at pp. 538–539, 541, 543–549.) *Mayo* generally conceded that "the omission of CALJIC No. 2.90 may amount to federal constitutional error when a jury is not adequately instructed as to . . . the constitutional [reasonable doubt] burden of proof . . . ." (*Mayo, supra*, at p. 541.) However, based on its review of all of the instructions given in that case, the *Mayo* court concluded the jury was, in fact, instructed on the reasonable doubt standard of proof that the prosecution bears and therefore there was no federal constitutional error in omitting CALJIC No. 2.90. (*Mayo, supra*, at pp. 539, 543–549.)

*Mayo* stated: "Here, the references to reasonable doubt related to the murder charge itself and directly informed the jury that, to convict Mayo of murder, it had to find each and every element of that charge beyond a reasonable doubt." (*Mayo, supra*, 140 Cal.App.4th at p. 547.) Therefore,

---

[9] The trial court instructed: " '[E]ach fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance upon which such inference necessarily rests must be proved beyond a reasonable doubt.' " (*Crawford, supra*, 58 Cal.App.4th at p. 820.)

[10] For the exact language of CALJIC No. 2.90, please refer to footnote 3, *ante*.

*Mayo* distinguished its circumstances from those in earlier California appellate court cases involving the omission of CALJIC No. 2.90 or other instructions on the reasonable doubt standard of proof. (*Mayo, supra,* at pp. 546–547.) *Mayo* further stated: "In reaching this conclusion we do not intend to suggest the omission of the reasonable doubt instruction contained in CALJIC No. 2.90 or CALCRIM No. 220 will never be federal constitutional error. Indeed, as *Vann, supra,* 12 Cal.3d 220, *Crawford, supra,* 58 Cal.App.4th 815, *Elguera, supra,* 8 Cal.App.4th 1214, and *Phillips, supra,* 59 Cal.App.4th 952 attest, the omission of the standard reasonable doubt instruction may well be federal constitutional error absent other instructions adequately informing the jury of the correct standard of proof. We hold only that under the specific facts of this case, the omission of the definition of reasonable doubt contained in CALJIC No. 2.90 does not constitute federal constitutional error." (*Mayo, supra,* at pp. 548–549.) In so holding, *Mayo* expressly avoided the question of whether the omission of adequate instructions on the reasonable doubt standard of proof would have constituted *Sullivan* structural error, thereby requiring reversal per se. (*Mayo, supra,* 140 Cal.App.4th at p. 548, fn. 13.) Because it found no federal constitutional error in the circumstances of its case, *Mayo* concluded that any error by the trial court in not instructing with CALJIC No. 2.90 was harmless error under *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]. (*Mayo, supra,* at pp. 550–552.)

As we have indicated, we believe the correct standard to apply in this case is the *Chapman* standard. In reaching that conclusion, we declined to follow the holdings in *Crawford, supra,* 58 Cal.App.4th 815 and *Phillips, supra,* 59 Cal.App.4th 952. We believe the California Supreme Court's decision in *Vann, supra,* 12 Cal.3d 220, establishes the correct standard of review and that the decision of the Court of Appeal in *Elguera, supra,* 8 Cal.App.4th 1214 is correct.

First, we note that the decision in *Crawford, supra,* 58 Cal.App.4th 815 did not fully consider that portion of the decision in *Elguera, supra,* 8 Cal.App.4th 1214 dealing with the proper standard of review. The court in *Crawford* omitted any consideration of *Elguera*'s specific rejection of the structural error analysis. Nor did the courts in *Phillips, supra,* 59 Cal.App.4th 952 or *Crawford* discuss the stare decisis considerations expressed in *Elguera.*

*Crawford, supra,* 58 Cal.App.4th 815, based its analysis in part on *Taylor v. Kentucky* (1978) 436 U.S. 478 [56 L.Ed.2d 468, 98 S.Ct. 1930] for the proposition that the presumption of innocence is basic to a fair trial. The *Crawford* court did not, however, mention or consider the decision in *Kentucky v. Whorton* (1979) 441 U.S. 786 [60 L.Ed.2d 640, 99 S.Ct. 2088], which stated, in part: "In short, the failure to give a requested instruction on

the presumption of innocence does not in and of itself violate the Constitution. Under *Taylor*, such a failure must be evaluated in light of the totality of the circumstances—including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors—to determine whether the defendant received a constitutionally fair trial." (*Id.* at p. 789; see also *Delo v. Lashley* (1993) 507 U.S. 272, 278 [122 L.Ed.2d 620, 113 S.Ct. 1222].) The court in *Phillips, supra,* 59 Cal.App.4th 952 also omitted any discussion of the *Whorton* decision.

*Sullivan, supra,* 508 U.S. 275 of course dealt with an erroneous instruction on reasonable doubt. In other words, the jurors there were misdirected or misinformed as to the proper standard of proof. In the case before us, much like the cases in *Vann, supra,* 12 Cal.3d 220 and *Mayo, supra,* 145 Cal.App.4th 535, the jurors were not misinformed, reasonable doubt was properly defined during the jury selection process. Several of the instructions given at the conclusion of the case reminded the jurors that the elements of the offenses had to be proved beyond a reasonable doubt. Both counsel told the jury the prosecution had to prove its case beyond a reasonable doubt. Thus, this case in our view is markedly different from the one in which the jurors are misinformed as to the proper standard of proof.

The year following *Sullivan, supra,* 508 U.S. 275 the court decided *Victor, supra,* 511 U.S. 1, 5, in which the court made clear the United States Constitution does not require courts to define reasonable doubt provided the jury is informed of the constitutionally correct standard of proof.

We conclude that at least in a case where the jurors have been told the prosecution must prove its case beyond a reasonable doubt and there has not been an erroneous definition of that burden of proof, the harmless-error standard applied by our Supreme Court in *Vann, supra,* 12 Cal.3d 220 remains the controlling law. We are satisfied that there has not been an intervening authority from the United States Supreme Court which undermines that precedent. (See *People v. Sengpadychith* (2001) 26 Cal.4th 316, 325–326 [109 Cal.Rptr.2d 851, 27 P.3d 739].) Accordingly, we are bound to follow the decision of our Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

## II

### INSTRUCTIONS ON REASONABLE DOUBT IN FLORES'S CASE

Flores contends the trial court erred by not instructing with CALJIC No. 2.90 or an alternative instruction on the reasonable doubt standard of

proof. He argues that because the jury was not informed the prosecution had the burden to prove each element of the offense(s) beyond a reasonable doubt, his convictions must be reversed.

## A

On July 8, 2005, during the second day of voir dire, or jury selection, the trial court instructed the jury panel of 36 prospective jurors with CALJIC No. 2.90 on the reasonable doubt standard of proof.[11] Apparently only four of those panel members were ultimately selected as jurors for Flores's trial. On July 11, during the third day of voir dire, or jury selection, the trial court again instructed eight continuing panel members (who were ultimately selected as jurors) and 25 new panel members with CALJIC No. 2.90 on the reasonable doubt standard of proof.[12] Although all panel members ultimately selected as jurors apparently were present during that instruction, they had yet to be empanelled or sworn by the court clerk. On July 12, the jurors selected for the jury were sworn by the clerk and empanelled by the court. The trial court did *not* instruct the jurors with CALJIC No. 2.90 at any time after their empanelment. In the course of giving other instructions before counsels' opening statements, the trial court informed the jurors they would have "all these instructions" in the jury room during their deliberations.

On July 19, after the close of evidence and before counsels' closing arguments, the trial court gave its predeliberation instructions to the jury, but *omitted* an instruction with CALJIC No. 2.90 on the reasonable doubt standard of proof. The court instructed with CALJIC No. 1.00 that the jurors must follow the law as the court states it and if "anything concerning the law said by the attorneys in their arguments or at any other time during the trial conflicts with my instructions on the law, you must follow my instructions." The court also instructed with CALJIC No. 2.01 on circumstantial evidence, stating in part: "[E]*ach fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt*. In other words, . . . before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance on which the inference necessarily rests must be proved beyond a reasonable doubt." (Italics added.) The court also instructed

---

[11] The trial court stated: "A defendant in a criminal action is presumed to be innocent until the contrary is proved. And in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty. [¶] This presumption places upon the People the burden of proving him guilty beyond a reasonable doubt. [¶] Reasonable doubt is defined as follows: it is not a mere possible doubt, because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case which after the entire comparison and consideration of all the evidence leaves the minds of the jurors in that condition that they can not say they feel an abiding conviction of the truth of the charge."

[12] That instruction was identical in language to the instruction quoted in footnote 11, *ante*.

with CALJIC No. 2.61 on a defendant's choice not to testify at trial, stating: "In deciding whether or not to testify, *a defendant may choose to rely on the state of the evidence and upon the failure, if any, of the People to prove beyond a reasonable doubt every essential element of the charge against him.* No lack of testimony on the defendant's part will make up for a failure of proof by the People so as to support a finding against him on any essential element." (Italics added.) Regarding counts 17 through 19 only, the court instructed in part: "*If you find the defendant guilty beyond a reasonable doubt of any of* the counts filed pursuant to Penal Code Section 803(g) (*Counts 17 through 19*), you must further determine, as to each count in which you find guilt, whether the People have proved the following factual allegations . . . ."[13] (Italics added.) Finally, regarding the section 667.61, subdivisions (b), (c) and (e) allegations as to all counts, the court instructed in part:

"If you find the defendant guilty of [any of counts 1 through 19], you must determine whether the defendant committed the offense against more than one victim, namely [N.C., A.C., and/or Stanley]. This requirement can be satisfied through any combination of victims, but requires a finding of guilt on at least two of the above-named victims.

"*The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find . . . it not to be true. . . .*" (Italics added.)

The trial court did *not* instruct, either orally or in writing, with CALJIC No. 2.90 on the reasonable doubt standard of proof.

In closing argument, the prosecutor stated in part:

"I'm going to talk about reasonable doubt. Reasonable doubt is reasonable doubt. It's not doubt beyond a shadow of a doubt. It's reasonable doubt. That is a doubt based on reasoned analysis, a doubt based on reason, doubt based on logic. Not doubt based on emotion or sympathy or speculation. It's a doubt based on reason.

---

[13] However, later in that instruction the court stated: "*The People have the burden of proving the truth of the Penal Code section 803(g) allegation by a preponderance of the evidence.* [¶] *Preponderance of the evidence means evidence that has more convincing force than that opposed to it.* [¶] If the evidence is so evenly balanced that you are unable to find that the evidence on either side of an issue preponderates, your finding on that issue must be against the party who had the burden of proving it. [¶] . . . [¶] *If you find the People have not proved the truth of the Penal Code section 803(g) allegations by a preponderance of the evidence, you must find the allegations untrue.*" (Italics added.) Also, in that instruction the court defined the "clear and convincing" standard of proof that applies to the independent evidence required to corroborate the victim's (i.e., Stanley's) allegations.

"Now, it says essentially that if you feel an abiding conviction to a moral certainty of the truth of these charges, an abiding conviction of the truth of these charged, you must vote guilty.

"Now, what does abiding conviction mean? . . . [If] three years from now you feel that your decision you made was the right decision in terms of his guilt, that's an abiding conviction, something that stays with you. [¶] So it's nothing complex. It's nothing inhumanly possible. It's very [commonsense]. It's an abiding conviction, something that stays with you.

"So there will always be mere possible doubts. But mere possible doubts do not equate to reasonable doubt. [¶] For example, some things that are not reasonable doubt if the defendant's mere denial that this happened. . . . [A] defendant's mere denial does not equal reasonable doubt. And mere conflicts in testimony about minor things [do] not equal reasonable doubt."[14]

In closing argument, Flores's counsel did not make *any* reference to reasonable doubt.

### B

Citing *Vann, Elguera, Crawford,* and *Phillips,* Flores contends the trial court committed federal constitutional error by not instructing the jury on the reasonable doubt standard of proof. Furthermore, citing *Sullivan, Crawford,* and *Phillips,* he contends that federal constitutional error was a structural defect in his trial, requiring reversal per se of all of his convictions. The People disagree, citing *Mayo* and arguing the instructions given by the trial court in this case adequately informed the jury of the reasonable doubt standard of proof and therefore the court's omission of an instruction with CALJIC No. 2.90 was not federal constitutional error. The People further argue that, assuming arguendo there was instructional error, the error was harmless under either the *Chapman* or *Watson* standard.

■ Based on our analysis of the cases discussed in part I, *ante,* and comparison of the circumstances in those cases with the circumstances in this case, we conclude this case is closely analogous to *Vann, supra,* 12 Cal.3d 220 and *Elguera, supra,* 8 Cal.App.4th 1214, and the trial court's instructions, considered individually and as a whole, did *not* inform the jury that the prosecution had the burden to prove each element of the charged offense(s)

---

[14] The prosecutor's entire closing argument filled about 32 pages of the reporter's transcript.

beyond a reasonable doubt. Therefore, the court committed federal constitutional error, which was not harmless beyond a reasonable doubt and therefore requires reversal per se of Flores's convictions.

First, although the trial court, during jury selection, instructed all of the ultimate jurors at least once (and some twice) with CALJIC No. 2.90 on the reasonable doubt standard of proof, the cases involving that circumstance have concluded reasonable doubt instruction during jury selection is insufficient to comport with federal constitutional requirements. (*Vann*, *supra*, 12 Cal.3d at p. 227, fn. 6; *Elguera*, *supra*, 8 Cal.App.4th at pp. 1217–1218, 1222.) In this case, the trial court gave the jury predeliberation instructions that began with the preface: "[N]ow it's my duty to instruct you on the law that applies to this case." Furthermore, the court's predeliberation instructions stated: "You must accept and follow the law as I *state* it to you . . . ." (Italics added.) However, the predeliberation instructions subsequently given by the court did *not* instruct with CALJIC No. 2.90 (or another instruction) on the reasonable doubt standard of proof and did *not* refer to or otherwise incorporate any of the instructions the court gave during jury selection (i.e., CALJIC No. 2.90), which were given eight days earlier. Therefore, the jurors presumably (and reasonably) inferred that all of the instructions on the law that they were to apply to the facts in this case were given them during the court's predeliberation instructions (or otherwise during trial).

■ Furthermore, it is unreasonable to expect prospective jurors, who have yet to be empanelled and sworn as actual jurors in the trial, to give the necessary attention and weight to instructions given by a trial court during jury selection as the federal constitution requires. As *Elguera* observed: "[T]he [reasonable doubt standard of proof] instruction was given not to actual jurors, but to prospective jurors who at the time did not know whether they would ultimately serve in the case. As a result, the members of the panel could well have viewed the court's remarks as hypothetical and thus have failed to give the instruction the same focused attention they would have had they been impaneled and sworn." (*Elguera*, *supra*, 8 Cal.App.4th at p. 1222.) Therefore, absent extraordinary circumstances (that do not exist in this case), instructions on the reasonable doubt standard of proof given during jury selection are insufficient to satisfy the federal constitutional requirements for the *structure* of a criminal trial.

■ Second, although the trial court instructed with CALJIC No. 2.01 on circumstantial evidence, the cases involving that circumstance have concluded the instruction is insufficient to comport with federal constitutional

requirements even though CALJIC No. 2.01 instructs " 'each fact which is essential to complete a set of circumstances necessary to establish a defendant's guilt has been proved beyond a reasonable doubt.' " (*Vann, supra*, 12 Cal.3d at pp. 226–227; *Elguera, supra*, 8 Cal.App.4th at p. 1218.) The jurors could have considered CALJIC No. 2.01's reference to the reasonable doubt standard of proof as applicable *only to circumstantial evidence* and *not to* the considerable *direct evidence* presented by the prosecutor in this case, including the testimonies of N.C., A.C., and Stanley regarding their direct observations of the acts Flores allegedly committed against them. As stated in *Vann*:

"Although [CALJIC No. 2.01] states, albeit indirectly, that an accused cannot be convicted on circumstantial evidence except where such evidence proves the issue beyond a reasonable doubt, it fails to tell the jurors that a determination of guilt resting on direct testimony must also be resolved beyond a reasonable doubt.

"The prosecution in the instant case depended in large part on direct evidence . . . . An instruction which requires proof beyond a reasonable doubt only as to circumstantial evidence, rather than importing a need for the same degree of proof where the crime is sought to be established by direct evidence, might with equal logic have been interpreted by the jurors as importing the need of a lesser degree of proof where the evidence is direct and thus of a higher quality." (*Vann, supra*, 12 Cal.3d at pp. 226–227.)

We conclude the trial court's instruction with CALJIC No. 2.01 in this case did *not* effectively inform the jury that the prosecution had the burden to prove each element of the charged offense(s) beyond a reasonable doubt.

■ Third, although the trial court instructed with CALJIC No. 2.61 on a defendant's choice not to testify, we conclude that instruction is insufficient to comport with federal constitutional requirements even though CALJIC No. 2.61 refers to the possible failure of the prosecutor "to prove beyond a reasonable doubt every essential element of the charge against him." We cannot presume that a reasonable doubt instruction given in a *specific* context (e.g., a defendant's choice not to testify) will necessarily be understood by all of the jurors to apply *generally* to their determination of the defendant's guilt on the charged offenses. We conclude the trial court's instruction with CALJIC No. 2.61 in this case did *not* effectively inform the jury that the prosecution had the burden to prove each element of the charged offense(s) beyond a reasonable doubt.

Fourth, although the trial court referred to the reasonable doubt standard of proof in instructing on the special findings necessary for the jury to find the statute of limitations on counts 17 through 19 (Flores's alleged lewd acts against Stanley) had not expired, that indirect reference was insufficient to satisfy federal constitutional requirements. We cannot presume that a reasonable doubt instruction given in a *specific* context (e.g., regarding special findings to be made in connection with certain charge(s)) will necessarily be understood by all of the jurors to apply *generally* to their determination of the defendant's guilt on *all* of the charged offenses (or even to the specific charges to which that special instruction applies). Counts 17 through 19 alleged Flores committed lewd acts against Stanley. However, the trial court's instruction with CALJIC No. 10.41 on the required elements for a lewd act (in violation of § 288, subd. (a)) did *not* include any reference to the reasonable doubt standard of proof. We conclude the trial court's specific instruction on the requirements for special findings related to counts 17 through 19 did *not* effectively inform the jury that the prosecution generally had the burden to prove each element of the charged offenses (whether all counts or just counts 17 through 19) beyond a reasonable doubt.

Fifth, although the trial court referred to the reasonable doubt standard of proof in instructing on the section 667.61 allegations (i.e., committing the offenses against more than one victim), that indirect reference was insufficient to satisfy federal constitutional requirements. We cannot presume that a reasonable doubt instruction given in a *specific* context (e.g., regarding the burden of proof required for true findings on special allegations) will necessarily be understood by all of the jurors to apply *generally* to their determination of the defendant's guilt on the charged offenses. We conclude the trial court's instruction on the section 667.61 allegation in this case did *not* effectively inform the jury that the prosecution had the burden to prove each element of the charged offense(s) beyond a reasonable doubt.

Finally, although the prosecutor discussed the reasonable doubt standard of proof during her closing argument, the cases involving that circumstance have concluded such closing argument is insufficient to comport with federal constitutional requirements. (*Vann, supra,* 12 Cal.3d at p. 227, fn. 6; *Elguera, supra,* 8 Cal.App.4th at pp. 1221–1222.) The California Supreme Court stated in *Vann*: "Although counsel for defendants, in their closing arguments, . . . advised the jurors that in order to bring in guilty verdicts they were required to find the elements of the crimes beyond a reasonable doubt, this . . . did not cure the error of the court's omission [of CALJIC No. 2.90]. [Citation.] In its final charge the court made it clear that the jurors were to follow the law as

explained by the court, and were not to follow rules of law stated in argument but omitted from the instructions." (*Vann, supra*, at p. 227, fn. 6.)

Also, the court in this case instructed with CALJIC No. 1.00 that the jurors must follow the law as the court states it and if "anything concerning the law said by the attorneys in their arguments or at any other time during the trial conflicts with my instructions on the law, you must follow my instructions." To the extent the prosecutor discussed or attempted to explain the reasonable doubt standard of proof during closing argument, the jurors could have reasonably ignored those statements of law by the prosecutor as effectively conflicting with the trial court's instructions on the law, which did *not* include CALJIC No. 2.90 or any other instruction that the prosecutor had the burden to prove each element of the charge(s) beyond a reasonable doubt. We conclude the prosecutor's closing argument did *not* effectively inform the jury that the prosecution had the burden to prove each element of the charged offense(s) beyond a reasonable doubt. In any event, we doubt that a prosecutor's statement on the law regarding the reasonable doubt standard of proof, by itself (i.e., without an instruction by the trial court) satisfies the federal constitutional requirements for the structure of a criminal trial.

The circumstances in this case are not similar to those in *Mayo, supra*, 140 Cal.App.4th 535. In *Mayo*, the trial court's instructions on elements of the charged offense and lesser offenses *expressly* stated: (1) " 'the burden is on the People to prove beyond a reasonable doubt each of the elements of murder' " (CALJIC No. 8.50); (2) " '[i]f you are convinced beyond a reasonable doubt and unanimously agree that the crime of murder has been committed by a defendant, but you unanimously agree that you have a reasonable doubt whether the murder was of the first or the second degree, you must give the defendant the benefit of that doubt and return a verdict fixing the murder as of the second degree as well as a verdict of not guilty of murder in the first degree' " (CALJIC No. 8.71); and (3) "if [the jury] had reasonable doubt as to whether the crime was murder or the lesser-included offense of manslaughter, it had to resolve that doubt by finding the crime to be manslaughter rather than murder, provided it was 'satisfied beyond a reasonable doubt that [Mayo was] guilty of the lesser crime . . .' (CALJIC No. 8.75)." (*Mayo, supra*, 140 Cal.App.4th at p. 545.) Based on those *express* instructions on the reasonable doubt standard of proof, *Mayo* concluded: "In sharp contrast to *Vann* the instructions in the instant case fully and repeatedly informed the jurors Mayo was entitled to an acquittal unless each element of the crime charged was proved beyond a reasonable doubt." (*Mayo, supra*, at p. 545.)

In this case, however, the trial court's instructions on the elements of the charged offenses of lewd acts (CALJIC No. 10.41) and aggravated sexual assault of a child (CALJIC No. 10.55) omitted any reference to, much less an adequate description of, the applicable burden of proof (i.e., the prosecutor had the burden to prove each element of the charged offense(s) beyond a reasonable doubt). Unlike the instructions given in *Mayo*, the instructions given by the trial court *in this case*, whether considered individually or together, did *not* "[inform] the jury it had to acquit [Flores] of [the charged offenses] unless each and every element [of those offenses] was proved beyond a reasonable doubt." (*Mayo, supra,* 140 Cal.App.4th at p. 546.) This case is not similar to *Mayo* and is, instead, similar to *Vann* and *Elguera.* Therefore, the court committed federal constitutional error by omitting CALJIC No. 2.90 or an alternative instruction on the reasonable doubt standard of proof. (*In re Winship, supra,* 397 U.S. at p. 364; *Vann, supra,* 12 Cal.3d at pp. 227–228; *Elguera, supra,* 8 Cal.App.4th at p. 1219; *Sullivan, supra,* 508 U.S. at p. 278; *Victor, supra,* 511 U.S. at p. 5.)

In short, we cannot say the trial court's error was harmless beyond a reasonable doubt. Accordingly, we reverse the judgment.

### III

### *OMISSION OF FOUR COUNTS FROM CALJIC NOS. 2.02 AND 3.31*

Because we have disposed of this case based on the reasoning expressed *ante*, we need not, and do not, address Flores's additional contention that the trial court erred by omitting counts 13 through 16 from its instructions with CALJIC Nos. 2.02 and 3.31. We presume that the trial court, on any retrial, will appropriately instruct the jury as to the law applicable to any and all counts against Flores.

### DISPOSITION

The judgment is reversed.

Irion, J., concurred.

**McDONALD, J.,** Concurring and Dissenting.—I concur in the majority opinion to the extent it (1) concludes the trial court committed constitutional

error by omitting CALJIC No. 2.90 or an alternative instruction on the reasonable doubt standard of proof and (2) reverses Stanley Raymond Flores's convictions. I dissent from the majority opinion to the extent it concludes the harmless error standard of *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824] applies to that federal constitutional error. As held in *People v. Crawford* (1997) 58 Cal.App.4th 815 [68 Cal.Rptr.2d 546] and *People v. Phillips* (1997) 59 Cal.App.4th 952 [69 Cal.Rptr.2d 532], the failure of a trial court in a criminal case to instruct the jury that the prosecution must prove each element of a charged offense beyond a reasonable doubt is federal constitutional error in noncompliance with the Fifth and Sixth Amendments of the United States Constitution, and requires reversal per se; the error cannot be considered harmless under *Chapman.*

A federal constitutional error in omitting an instruction that the prosecution has the burden to prove each element of a charged offense beyond a reasonable doubt is *structural* error under *Sullivan v. Louisiana* (1993) 508 U.S. 275 [124 L.Ed.2d 182, 113 S.Ct. 2078] (*Sullivan*), and is not subject to the harmless error analysis under *Chapman.* As the majority opinion notes, *Sullivan* stated: "Although most constitutional errors have been held amenable to harmless-error analysis, see *Arizona* v. *Fulminante*, 499 U.S. 279, 306–307 [113 L.Ed.2d 302, 111 S.Ct. 1246] (1991) . . . , some will always invalidate the conviction. [Citations.] The question in the present case is to which category the present error belongs. [¶] . . . The inquiry . . . is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error. That must be so, because to hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee. [Citations.]" (*Sullivan, supra*, 508 U.S. at pp. 279–280.) Because of the constitutionally deficient definition of the reasonable doubt standard of proof, *Sullivan* concluded there had been no jury verdict within the meaning of the Sixth Amendment. (*Sullivan*, at p. 280.) The court stated: "There being no jury verdict of guilty-beyond-a-reasonable-doubt, the question whether the *same* verdict of guilty-beyond-a-reasonable-doubt would have been rendered absent the constitutional error is utterly meaningless. There is no *object*, so to speak, upon which harmless-error scrutiny can operate. . . . The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal; it requires an actual jury finding of guilty. [Citation.]" (*Id.* at p. 280.) *Sullivan* explained: "[T]he essential connection to a 'beyond a reasonable doubt' factual finding cannot be made where the instructional error consists of a *misdescription* of the burden of proof, which vitiates *all* the jury's findings." (*Id.* at p. 281, first italics added.)

In this case, *Sullivan*'s reasoning and holding apply to the omission of an instruction on the reasonable doubt standard of proof. Whether the instructional error is a "misdescription" of the burden of proof, as in *Sullivan*, or a "nondescription" (i.e., no description of or instruction on) the burden of proof, the same analysis applies. With either a misdescription or an absence of a description of that burden of proof, the jury has not found the defendant guilty based on the constitutionally required standard of proof beyond a reasonable doubt. As *Sullivan* noted, were the appellate court to apply the *Chapman* standard of prejudicial error, the wrong entity (i.e., a judge, rather than a jury) would be determining the defendant's guilt. (*Sullivan, supra,* 508 U.S. at p. 281.) Furthermore, *Sullivan* concluded the harmless-error analysis could not apply in its case because the instructional error involved a "structural defect." (*Id.* at pp. 281–282.) The court stated: "In *Fulminante,* we distinguished between, on the one hand, 'structural defects in the constitution of the trial mechanism, which defy analysis by "harmless-error" standards,' 499 U.S., at [page] 309, and, on the other hand, trial errors which occur 'during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented,' *id.,* at [pages] 307–308. *Denial of the right to a jury verdict of guilt beyond a reasonable doubt is certainly an error of the former sort [i.e., a structural defect], the jury guarantee being a 'basic protectio[n]' whose precise effects are unmeasurable, but without which a criminal trial cannot reliably serve its function* [citation]." (*Sullivan,* at p. 281, italics added.)[1] *Sullivan* concluded: "*The deprivation of that right* [i.e., constitutional right to a jury verdict of guilty beyond a reasonable doubt], *with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as 'structural error.'* " (*Id.* at pp. 281–282, italics added.) Accordingly, the court reversed the judgment *without* conducting a *Chapman*-style analysis of harmless error. (*Sullivan, supra,* 508 U.S. at p. 282.) Therefore, *Sullivan* held that a *structural error* in violation of the United States Constitution (e.g., instructional error depriving a defendant of the right to a jury verdict of guilty beyond a reasonable doubt) requires *reversal per se* of the judgment. That holding applies to not only "misdescriptions" of the burden of proof, but also to "nondescriptions" (or lack of descriptions) of the burden of proof.

Like the courts in *Crawford* and *Phillips,* because in this case the trial court, in noncompliance with the Fifth and Sixth Amendments of the United States Constitution, did not instruct the jury that the prosecution had the burden to prove each of the elements of the charged offense(s) beyond a

---

[1] The majority omits the italicized language from *Sullivan* in concluding the *Chapman* standard applies to the federal constitutional error in this case. That language shows the United States Supreme Court believes the denial of a defendant's right to a jury trial, including an instruction on the applicable reasonable doubt standard of proof, is structural error and *not* subject to harmless error analysis.

reasonable doubt, *Sullivan*'s holding applies to require *reversal per se* of Flores's convictions. (*People v. Crawford, supra,* 58 Cal.App.4th at pp. 817, 821–823; *People v. Phillips, supra,* 59 Cal.App.4th at pp. 954, 956–958.) As *Crawford* stated: "*Denial of the right to trial by jury verdict of guilty beyond a reasonable doubt,* Justice Scalia concluded [in *Sullivan*], *was a 'structural defect' in the trial mechanism, requiring reversal per se.* [Citation.]" (*Crawford,* at p. 822, italics added.) *Crawford* further stated: "In our view, *Sullivan* compels the conclusion that *the trial court, in the case before us, erred in failing to instruct, after presentation of the evidence, on the requirement of proof beyond a reasonable doubt and in failing to assign the burden of proof to the prosecution, in effect denying to appellant the most elementary and fundamental right provided by our system of justice, a jury verdict of guilty beyond a reasonable doubt.*" (*Crawford,* at pp. 822–823, italics added.) The reasoning in *Crawford* is persuasive. Furthermore, *Phillips* rejected the contention that *Sullivan*'s reversal per se requirement should not apply to cases in which a trial court wholly omits any instruction on the reasonable doubt standard of proof (in contrast to instructing with a deficient definition of reasonable doubt, as in *Sullivan*). (*Phillips, supra,* 59 Cal.App.4th at pp. 957–958.)

*People v. Vann* (1974) 12 Cal.3d 220 [115 Cal.Rptr. 352, 524 P.2d 824] is no longer controlling precedent to the extent it held the *Chapman* standard of reversible error applies to the federal constitutional error of failing to instruct on the reasonable doubt standard of proof. *Vann* was issued in 1974, almost 20 years *before* the United States Supreme Court issued *Sullivan* in 1993. As both *Crawford* and *Phillips* expressly recognized, *Sullivan* requires that we now apply the reversible per se standard, rather than the *Chapman* harmless error standard, to such structural defects in violation of the United States Constitution. In so concluding, both *Crawford* and *Phillips* implicitly conclude *Sullivan* in effect overruled *Vann* to the extent *Vann* held the *Chapman* harmless error standard applies to those errors or defects. I *expressly* conclude *Sullivan* has overruled *Vann* to the extent it held the *Chapman* standard of harmless error applies to structural defects in violation of the United States Constitution (i.e., omission of an instruction on the reasonable doubt standard of proof). Accordingly, this court is not bound by *Vann* to apply the *Chapman* standard of harmless error and, instead, must apply to this case the reversible per se standard required by *Sullivan*. It is difficult to read the entire opinion of Justice Scalia in *Sullivan* and yet conclude a criminal defendant can receive his "right to a jury verdict of guilty beyond a reasonable doubt" (*Sullivan, supra,* 508 U.S. at p. 281) in

compliance with the Sixth Amendment of the United States Constitution when his or her jury has not been instructed that the prosecution must prove each element of the charged offense beyond a reasonable doubt. Because Flores was denied his federal constitutional right to a jury verdict of guilty beyond a reasonable doubt (*Sullivan*, at p. 278), I agree with the majority that all of Flores's convictions must be reversed, but disagree with the majority that a harmless-error analysis under *Chapman* applies.