[No. A071827. First Dist., Div. Two. Oct. 23, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
BRAD EARL CRAWFORD, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rule 976(b), this opinion is certified for publication with the exception of part III. B.

816

**COUNSEL**

Gary Garfinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, and John R. Vance, Jr., Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

HAERLE, J.—

### I. Introduction

Brad Earl Crawford (appellant) was charged by information with robbery (Pen. Code, § 211),[1] second degree burglary (§ 459), two counts of petty theft with a prior based on a burglary in Oregon (§ 666), resisting a police officer, a misdemeanor (§ 148), and possession of a hypodermic syringe, a misdemeanor (Bus. & Prof. Code, § 4149). The robbery count also alleged an enhancement for use of a deadly weapon (§ 12022, subd. (b)). The jury returned verdicts of guilty on all counts but found that appellant did not use a deadly or dangerous weapon in the robbery. Appellant was sentenced to a five-year term for robbery and to three consecutive eight-month terms each on the burglary and petty thefts.

We must decide on the standard of review for assessing prejudice for the trial court's failure to instruct on the presumption of innocence and on the prosecution's burden of proof beyond a reasonable doubt (CALJIC No. 2.90). We conclude that the failure to instruct on these fundamental principles is constitutional error that requires per se reversal of the judgment and that it is also prejudicial error requiring reversal under any standard.

### II. Factual and Procedural Background

A. *Substantive Crimes*

The shoplifting occurred in four stores in Eureka: a knife-sharpening stone from Long's Drugs, a rotary tool from Sears, a watch from J.J. Newberry, and a bottle of schnapps from Waremont Foods. Appellant admitted all of them and was prepared to plead guilty on all counts if the theft at Long's Drugs was not charged as a robbery. Prior to trial, the court observed that the alleged robbery was "not as strong a case as far as the taking with force or fear" and suggested that it be resolved as a second degree burglary. The prosecutor declined because, "*we want it to be a strike. If the jury decides it's not, so be it. But we wish to go forward on that.*" (Italics added.)

*The robbery*: Appellant was observed trying to conceal the sharpening stone in his clothing. He was followed by an employee to the exit. As he went out the "Out" door, the employee went out the "In" door. (A handrail separated the electronic doors.) The employee testified that appellant

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

stopped after he exited. She did too: "And I looked at him. And he just stared at me, just this cold stare. And that's when I looked down and saw the knife in his hand." Appellant did not "brandish" the knife; "[h]e kept his hands down against his body the whole time he stared at me." Neither of them said a word. The employee held her palms up to "let him know I was not going to, uh, approach him any further, that I—I was scared. I backed away." Appellant folded the knife and walked away.

Appellant testified that he concealed the knife sharpener, but did not conceal the knife he had in his hand. As he walked past the first cash register, he opened the knife and "tried to nonchalantly look cool so it wasn't looking like I was stealing anything, cleaning my fingernails as I was walking out the door." He saw the employee walking out the "In" door as he was walking out the "Out" door. He did not stop, they did not speak, and he did not show her the knife. It was possible that she saw the knife in his hand, but he did not in any way threaten her with it, and he just kept on walking.

*The burglary:* The burglary incident at a Sears Roebuck store involved the theft of a power tool. Appellant unsuccessfully attempted to put the power tool in his pants. He then carried the tool to the children's section and put it on a shelf. He left the store and returned a few minutes later; went to the children's section, put the tool in his pants, and was arrested. The incident was recorded on videotape.

*The petty thefts:* In Newberry's, appellant asked to examine a $24 Timex watch; when the saleswoman returned, the Timex was gone and a different watch was on the counter. Appellant left the store without paying and was stopped outside the store. As he was denying that he took a watch, it fell from his pants.

The second theft, from Waremont Foods, was of a bottle of schnapps which appellant was observed stuffing up his sleeve. It fell from the sleeve when he was stopped as he walked away from the store. The two misdemeanor counts were related to the Waremont theft: Appellant fled from the store's security office and, when approached by police two days later, ran off again. He was arrested for resisting arrest; a search of his person revealed the hypodermic syringe in his jacket.

The two petty thefts were charged as felonies based on a prior conviction in Oregon for burglary—appellant had allegedly entered a building with the intent to commit the crime of theft. The record showed that he served 30 days as a condition of probation.

The jury convicted appellant on all counts. The allegation that appellant used a deadly weapon in the robbery was found not true. His main contention on appeal relates to the trial court's unexplained failure to instruct the

jury before deliberations on the presumption of innocence and the prosecution's burden to prove its case beyond a reasonable doubt. Appellant also (1) assigns instructional error on the robbery count (i.e., that the trial court failed to instruct on the intent and act required for the "fear" element of robbery), (2) questions the propriety of prosecuting the misdemeanors in superior court, and (3) challenges the validity of the Oregon prior as an enhancement in the petty theft counts. On the third point, the Attorney General concedes, under compulsion of *People* v. *Marquez* (1993) 16 Cal.App.4th 115, 122-124 [20 Cal.Rptr.2d 365], that the Oregon conviction does not constitute a prior for purposes of section 666 because the elements of an Oregon burglary are not the same as those of a California burglary— theft in Oregon does not require, as it does in California, the mens rea to permanently deprive the owner of his property.

## B. *Instructional Error*

There is no question that the failure to instruct sua sponte on the principles of the prosecutor's burden and the presumption of innocence was error. The only question is the prejudicial impact of the error.

Both the prosecution and defense requested that the court give the standard instruction (CALJIC No. 2.90 (1994 rev.)). The court indicated that it would. However, the court did not read the instruction to the jury and did not include it with the written instructions available to the jury. Neither counsel objected to the omission.[2] Appellant contends that omitting the most fundamental and elementary of criminal instructions violates his constitutional rights to a jury trial and due process and that the error is reversible per se. The Attorney General responds that there was no error because the jury was informed as to the presumption of innocence and the principle of reasonable doubt during the jury selection and that any error was harmless beyond a reasonable doubt.

Appellant's trial was conducted on August 7 and 8, 1995. Before the prospective jurors were questioned, the court told them that there was an important limitation on their ability to act as judges of the facts, namely their obligation to follow the law: The court stated: "*At the end of this trial* I'll be giving instructions to you about what the law is that applies to this particular case. And it's your obligation to follow *that* law." (Italics added.) The court repeated: "As I mentioned previously, I will be instructing you on what the

---

[2]The Attorney General suggests the error occurred when the court settled instructions. The defense had requested that both CALJIC Nos. 2.90 and 2.91 be given. The court queried defense counsel whether he wished both; counsel withdrew No. 2.91. That instruction, along with CALJIC No. 2.90, was then apparently put in the file of "not given" instructions.

law is. The attorneys do have a right to comment on the law. And I expect that they would. However, I do want you to understand that if their comments are different from what I say, that you have to go by what I say."

The court also addressed the prospective jury panel as follows: "As I mentioned previously, this is a criminal case. In a criminal case the defendant, under our constitutional system, is presumed to be innocent until the contrary is proved. And in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty. The effect of this presumption is only to place upon the State the burden of proving him guilty beyond a reasonable doubt, which I'll define for you. [¶] It's not a mere possible doubt. Because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case which after the entire comparison and consideration of all the evidence leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge."[3]

As noted, the court did not read CALJIC No. 2.90 in its predeliberation charge to the jury. The trial court did refer to "reasonable doubt" in the instructions related to circumstantial evidence (CALJIC No. 2.01) and use of a deadly or dangerous weapon (CALJIC No. 17.16). In instructing on circumstantial evidence, the court said: ". . . each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance upon which such inference necessarily rests must be proved beyond a reasonable doubt." Instructing on weapon use in the robbery count, the court stated in pertinent part: "The term quote 'used a deadly or dangerous weapon,' end quote as used in this instruction, means to display such a weapon in an intentionally menacing manner or intentionally to strike or hit a human being with it. [¶] The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true."

The court also told the jurors that it was going to instruct them "on the law that applied to the case" and repeated the admonition given to the prospective jury panel that if anything in the argument of counsel conflicted with the court's instructions, they were to follow the instructions. (CALJIC No. 1.00.)

Both the prosecutor and defense counsel addressed the requirement that the burden of proof at trial was that of beyond a reasonable doubt, each contending, in his respective interest, that it had been or had not been met.

---

[3]The quoted portion conforms in pertinent respects with the language of CALJIC No. 2.90, as revised in 1994.

## III. Discussion

### A. *Instructional Error*

The fundamental importance of the requirement of proof beyond a reasonable doubt as a component of the right to trial by jury in our scheme of justice was clearly enunciated in *Sullivan* v. *Louisiana* (1993) 508 U.S. 275 [113 S.Ct. 2078, 124 L.Ed.2d 182] (*Sullivan*). Similarly, *Taylor* v. *Kentucky* (1978) 436 U.S. 478 [98 S.Ct. 1930, 56 L.Ed.2d 468] had earlier declared that the principle of a presumption of innocence was basic to the administration of our criminal law and that failure to instruct thereon violated the right to a fair trial. In each instance, the court reversed the judgment. In California, our high court and another division of this district have affirmed the importance of the concepts of a presumption of innocence and the state's burden of proof beyond a reasonable doubt. In *People* v. *Vann* (1974) 12 Cal.3d 220 [115 Cal.Rptr. 352, 524 P.2d 824] (*Vann*) and *People* v. *Elguera* (1992) 8 Cal.App.4th 1214 [10 Cal.Rptr.2d 910] (*Elguera*), the courts reversed the judgments where the trial courts had inadvertently failed to instruct on these constitutional principles.

The *Sullivan* decision is straightforward and uncompromising. The court held that a constitutionally deficient reasonable doubt instruction *cannot* be harmless error.[4] Referring first to the right to trial by jury, Justice Scalia stated: "The right includes, of course, as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of 'guilty.' [Citation.] Thus, although a judge may direct a verdict for the defendant if the evidence is legally insufficient to establish guilt, he may not direct a verdict for the State, no matter how overwhelming the evidence. [Citations.] [¶] What the factfinder must determine to return a verdict of guilty is prescribed by the Due Process Clause. The prosecution bears the burden of proving all elements of the offense charged, [citations] and must persuade the factfinder 'beyond a reasonable doubt' of the facts necessary to establish each of those elements." (*Sullivan, supra,* 508 U.S. at pp. 277-278 [113 S.Ct. at p. 2080].)

"It is self-evident, we think, that the Fifth Amendment requirement of proof beyond a reasonable doubt and the Sixth Amendment requirement of a jury verdict are interrelated. It would not satisfy the Sixth Amendment to have a jury determine that the defendant is *probably* guilty, and then leave it up to the judge to determine (as *Winship* [(1970) 397 U.S. 358, 364 [90 S.Ct. 1068, 25 L.Ed.2d 368]] requires) whether he is guilty beyond a reasonable

---

[4]The *Sullivan* instruction was deficient in its definition of reasonable doubt; it spoke of "grave uncertainty" and "substantial doubt."

doubt. In other words, *the jury verdict required by the Sixth Amendment is a jury verdict of guilty beyond a reasonable doubt."* (*Sullivan, supra*, 508 U.S. at p. 278 [113 S.Ct. at p. 2081], italics added.)

Relying principally on *Arizona* v. *Fulminante* (1991) 499 U.S. 279 [111 S.Ct. 1246, 113 L.Ed.2d 302] (*Fulminante*), Justice Scalia concluded that the giving of a constitutionally deficient reasonable doubt instruction is among those constitutional errors that require reversal of a conviction, rather than those that are amenable to harmless error analysis.[5] The court reasoned that, essentially, there had been no jury verdict within the meaning of the Sixth Amendment, the premise for harmless error analysis. "There being no jury verdict of guilty-beyond-a-reasonable-doubt, the question whether the *same* verdict of guilty-beyond-a-reasonable-doubt would have been rendered absent the constitutional error is utterly meaningless. There is no *object*, so to speak, upon which harmless-error scrutiny can operate. The most an appellate court can conclude is that a jury *would surely have found* petitioner guilty beyond a reasonable doubt—not that the jury's actual finding of guilty beyond a reasonable doubt *would surely not have been different* absent the constitutional error. That is not enough." (*Sullivan, supra*, 508 U.S. at p. 280 [113 S.Ct. at p. 2082].) Denial of the right to trial by jury verdict of guilty beyond a reasonable doubt, Justice Scalia concluded, was a "structural defect" in the trial mechanism, requiring reversal per se. (*Id.* at pp. 281-282 [113 S.Ct. at p. 2082].)

Chief Justice Rehnquist, author of *Fulminante*, concurred, but expressed concern that the majority may have painted with too broad a brush. He noted the instances where the court had applied harmless error analysis to instructional error and he suggested that the deficiency in *Sullivan* in many respects bore the hallmark of an error that is amenable to harmless-error analysis. The Chief Justice added: "In this regard, a trial in which a *deficient* reasonable-doubt instruction is given seems to me to be quite different from one in which no reasonable-doubt instruction is given at all." (*Sullivan, supra*, 508 U.S. at p. 284 [113 S.Ct. at p. 2084], italics added.) Nevertheless, the Chief Justice accepted the majority's conclusion that a constitutionally deficient *reasonable doubt instruction* "is a breed apart from the many other instructional errors that we have held *are* amenable to harmless-error analysis." (*Ibid.*)

■ In our view, *Sullivan* compels the conclusion that the trial court, in the case before us, erred in failing to instruct, after presentation of the

---

[5]In *Fulminante*, the court had distinguished between "structural defects" which affect "the framework within which the trial proceeds," and "trial error[s]" which occur "during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented." (*Fulminante, supra*, 499 U.S. at pp. 307-310 [111 S.Ct. at pp. 1263-1265].)

evidence, on the requirement of proof beyond a reasonable doubt and in failing to assign the burden of proof to the prosecution, in effect denying to appellant the most elementary and fundamental right provided by our system of justice, a jury verdict of guilty beyond a reasonable doubt.

We reject outright the Attorney General's claim that no federal constitutional error occurred and that *Sullivan* has no application here. It is the Attorney General's position that the giving of a reasonable doubt instruction during jury selection and not repeating it at the conclusion of the case does not constitute a "misdirection of the burden of proof" or a "structural defect." At most, he suggests, the trial court's failure to reiterate that instruction at the conclusion of trial violated state procedural rules.

In this regard, the Attorney General invokes the provisions of section 1093. He first argues that section 1093 permits the court to give instruction to the jury at the beginning of the case and from time to time during the trial and does not require repetition of instructions given during jury selection. He misreads section 1093. The section sets out the order of proceedings *after the jury has been "impaneled and sworn."* (Italics added.) Section 1093, subdivision (f), does provide for discretionary instruction "[a]t the beginning of the *trial*" or "from time to time during the trial," but it also provides for charging the jury when the evidence is concluded and arguments have been made. The instructions to the panel of prospective jurors were given here *before trial commenced* (i.e., before the jury was impaneled and sworn), outside of the time frame covered by section 1093. As Justice Werdegar explained in *Elguera, supra,* 8 Cal.App.4th at page 1222: "[T]he instruction was given not to actual jurors, but to prospective jurors who at the time did not know whether they would ultimately serve in the case. As a result, the members of the panel could well have viewed the court's remarks as hypothetical and thus have failed to give the instruction the same focused attention they would have had they been impaneled and sworn."

Even if we were inclined to disagree with the applicability of the *Sullivan* "reversal per se" criterion in the circumstances of the instant case, we would still be compelled to reverse the judgment. Prior to the decision in *Sullivan,* the courts in *Vann, supra,* 12 Cal.3d 220, 225-228, and *Elguera, supra,* 8 Cal.App.4th 1214, 1219-1224, had grappled with the issue of failure to instruct on the presumption of innocence and the prosecution's burden and requirement of proof beyond a reasonable doubt. In each instance, the court, after finding error, went directly into a harmless error analysis.

*Vann* and *Elguera* are strikingly similar to the instant case. In each, the trial court had inexplicably failed to give predeliberation instruction on the

presumption of innocence and the allocation and standard of the burden of proof; in each, the concept of reasonable doubt had been included in one or more instructions on specific matters, most often in the circumstantial evidence instruction; in each, the prospective jury panel had been informed to some extent on the presumption of innocence and the state's burden of proof beyond a reasonable doubt; in each, both counsel had argued to the jury about the allocation of the burden and standard of proof, and in each, as noted above, the court concluded that *Chapman* (*Chapman* v. *California* (1967) 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705]) required reversal of the judgment.

The Attorney General attempts to distinguish *Vann* as a case involving the "*complete* failure to give the reasonable doubt instruction." He is, again, quite wrong. In fact, *Vann* is indistinguishable from the case before us insofar as it concerns the effect of the trial court's pretrial instruction of prospective jurors. The court concluded that the pretrial instructions did not cure the trial court's failure to charge the jury on the state's burden of proof beyond a reasonable doubt. At the conclusion of the posttrial charge, the jurors were told that they had been instructed on " 'all the rules of law necessary for you to reach a verdict.' " (*Vann, supra,* 12 Cal.3d at p. 227, fn. 6.) In net effect, the *Vann* court stated, ". . . the jurors were given to understand that they had received a self-contained, complete statement of the law they were to follow." (*Ibid.*) The *Vann* court likewise ruled that the arguments of counsel did not cure the error of the trial court's omission.

*Vann* also provides guidance in another respect. It rejected the argument that the trial court's omission was cured by the instruction that inferences from circumstantial evidence must be proved beyond a reasonable doubt. The *Vann* court found the circumstantial instruction insufficient because it failed to tell the jurors that a determination of guilt resting on *direct testimony* must also be resolved beyond a reasonable doubt. This is a matter of some importance in a case, such as *Vann,* where the prosecution relied in large part on direct evidence. The court stated: "An instruction which requires proof beyond a reasonable doubt only as to circumstantial evidence, rather than importing a need for the same degree of proof where the crime is sought to be established by direct evidence, might with equal logic have been interpreted by the jurors as importing the need of a lesser degree of proof where the evidence is direct and thus of a higher quality." (*Vann, supra,* 12 Cal.3d at pp. 226-227.) In the case before us, as in *Vann,* the evidence, especially on the robbery count, the most serious facing appellant, was direct, not circumstantial. Here, too, the prosecution's case depended on the testimony of the employee who followed appellant after the theft and the resolution of the conflict created by that testimony versus the testimony of the appellant.

Here, the jury was instructed on reasonable doubt in a second specific instance, namely as to the finding to be made on the use of a deadly or dangerous weapon in the course of the robbery. Significantly, the jury returned a finding of nonuse. One can only speculate as to what the jurors would have done had they been admonished to find guilt only if they were convinced beyond a reasonable doubt on the robbery count—which the court before trial had seen as weak on the issue of force or fear.[6]

We conclude, as did the *Vann* court, that the foregoing specific references to reasonable doubt in isolated applications of that standard of proof fell short of apprising the jurors that appellant was entitled to acquittal unless each element of the crimes charged was proved to the jurors' satisfaction beyond a reasonable doubt, buttressed by additional instructions on the meaning of that phrase.

*Elguera* presented essentially the same problem, an inadvertent failure to instruct before deliberations on the presumption of innocence and the prosecution's burden of proof beyond a reasonable doubt. At the time of jury selection, the jurors were fully instructed on the presumption of innocence and on the state's burden of proof beyond a reasonable doubt. Each prospective juror was also asked whether he or she understood the requirement of proof beyond a reasonable doubt; each responded affirmatively. And, the time interval between the pretrial instruction and the final charge was considerably greater in *Vann* than in *Elguera*—more than two weeks in *Vann*, a single day or less in *Elguera*.

The *Elguera* jury was also instructed on circumstantial evidence and reasonable doubt. Because the prosecution's case in *Elguera* depended almost entirely on circumstantial evidence, the potential prejudice was probably somewhat less than in *Vann*, and in that regard also less than it is in the case before us. Nevertheless, the *Elguera* court, not convinced beyond a reasonable doubt that the court's error had no effect on the verdict, reversed the judgment.

There can be little question that instruction on the presumption of innocence and the reasonable doubt standard of proof *after the presentation of evidence* places the concepts at center stage for consideration during deliberations. As *Elguera* noted, "If any phrase should be ringing in the jurors' ears as they leave the courtroom to begin deliberations, it is 'proof beyond a reasonable doubt.' " (*Elguera, supra,* 8 Cal.App.4th at pp. 1222-1223.)

---

[6]It is also significant that the jury requested "a list of what constitutes robbery." The court reread the standard instruction. The jury then inquired directly whether it could find appellant guilty of robbery but not the use of a weapon. The court responded simply "yes."

We must be ever diligent to guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt. (*In re Winship* (1970) 397 U.S. 358, 364 [90 S.Ct. 1068, 1072-1073, 25 L.Ed.2d 368].) Instructions given after the evidence has been received and before deliberations commence is one way of protecting an accused's constitutional right to be judged solely on the basis of proof adduced at trial. Therefore, whether we view the instant case through the prism of the right to trial by jury articulated in the *Sullivan* case and reverse per se or conclude under *Chapman* that we cannot find the error harmless beyond a reasonable doubt, we must reverse the judgment.

**B.   *Other Issues*** *

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

IV.   DISPOSITION

The judgment is reversed.

Kline, P. J., and Ruvolo, J., concurred.

A petition for a rehearing was denied November 20, 1997, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied February 3, 1998.

---

*See footnote, *ante*, page 815.