LIU, J., Concurring and Dissenting.
A fundamental tenet of our criminal law is that “the Due Process Clause protects the accused against conviction *378 except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.” (In re Winship (1970) 397 U.S. 358, 364 [25 L.Ed.2d 368, 90 S.Ct. 1068].) Accordingly, the jury verdict required under the Sixth Amendment to convict a person of a criminal offense “is a jury verdict of guilty beyond a reasonable doubt.” (Sullivan v. Louisiana (1993) 508 U.S. 275, 278 [124 L.Ed.2d 182, 113 S.Ct. 2078] (Sullivan).) The trial court has a constitutional duty to so instruct the jury. (Id. at p. 281.)
The trial court in this case failed to give a standard reasonable doubt instruction that would have apprised the jury that “[a] defendant in a criminal action is presumed' to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty. This presumption places upon the People the burden of proving him guilty beyond a reasonable doubt.” (CALJIC No. 2.90; see CALCRIM No. 220.) I agree with today’s opinion that despite this omission, the trial court did not commit federal constitutional error requiring defendant’s voluntary manslaughter conviction to be overturned. As the court explains, the trial court repeatedly mentioned the reasonable doubt standard when instructing the jury on the elements of murder and its lesser included offenses, including voluntary manslaughter. The jury was clearly informed that in order to convict defendant of murder or voluntary manslaughter, the prosecutor had to prove all the elements of those offenses beyond a reasonable doubt. I also agree with the court that the failure to define reasonable doubt in this case does not require reversal of that conviction.
Furthermore, I agree with today’s holding that the trial court committed federal constitutional error in failing to instruct the jury that defendant could not be convicted of active participation in a criminal street gang in violation of Penal Code section 186.22 (all statutory references are to this code) unless the prosecution had proven his guilt beyond a reasonable doubt. However, as explained below, I do not agree that the error was harmless.
Until today, no California case had ever held or even suggested that despite a trial court’s failure to instruct the jury with a standard reasonable doubt instruction or some other instruction connecting the reasonable doubt standard to a charged offense, an appellate court can still be certain beyond a reasonable doubt that the jury understood its obligation with respect to that offense. California precedent is uniformly to the contrary; every case to have found inadequate instruction on the reasonable doubt standard has found such error to warrant reversal. The uniformity of this precedent reflects the firm and justified conviction of our courts that “ ‘[n]o instruction could be more vital. . .’ ” (People v. Vann (1974) 12 Cal.3d 220, 227 [115 Cal.Rptr. 352, 524 P.2d 824] (Vann)) than one that assures a defendant “the most elementary and *379 fundamental right provided by our system of justice, a jury verdict of guilty beyond a reasonable doubt” (People v. Crawford (1997) 58 Cal.App.4th 815, 823 [68 Cal.Rptr.2d 546] (Crawford)).
Today’s decision is an unwarranted departure. The court correctly concludes that the trial court’s omission of the standard reasonable doubt instruction was federal constitutional error because none of the given instructions, singly or collectively, “otherwise cover[ed] the requirement that the prosecution prove defendant’s guilt of the gang offense beyond a reasonable doubt.” (Maj. opn., ante, at p. 362.) But the court nevertheless believes “[w]e can say beyond a reasonable doubt on the record before us that the jury’s verdict on the gang offense charge must have been based on a finding of guilt beyond a reasonable doubt.” (Id. at p. 373.) This assertion is frankly mystifying. It is inconsistent with the court’s own rationale for finding federal constitutional error. It disregards precedent strongly pointing the other way. And it fails to recognize that a perfectly reasonable juror could have applied the reasonable doubt standard only to the murder charge and not to the gang offense exactly as the trial court instructed. Moreover, the court finds harmless error even though no party asked us to decide that issue; the Attorney General conceded in her answer brief that the instructional error on the gang offense required reversal. Even assuming the possibility of a rare case in which failure to properly instruct on the reasonable doubt standard does not prejudice a criminal defendant, this is not that case. Because the court has erroneously and unnecessarily reached out to find the instructional error on the gang offense harmless, I respectfully dissent from that portion of today’s opinion.
I.
To put into perspective the novelty of the court’s finding of harmless error, it is helpful to begin with some background law. In Sullivan, supra, 508 U.S. 275, the United States Supreme Court held that a trial court’s misleading and erroneous reasonable doubt instruction requires reversal of the conviction. The high court explained that “where the instructional error consists of a misdescription of the burden of proof,” the error “vitiates all the jury’s findings.” (Id. at p. 281.) As a result, “[a] reviewing court can only engage in pure speculation—its view of what a reasonable jury would have done. And when it does that, The wrong entity judge[s] the defendant guilty.’ [Citation.]” (Ibid.)
In the present case, the trial court did not give an incorrect or misleading statement of the reasonable doubt instruction. Instead, the trial court failed to give the standard reasonable doubt instruction. The issue before us is whether this omission was federal constitutional error and, if so, whether reversal is *380 warranted. Until today, all California courts that have considered the matter have found that where the trial court has omitted the standard reasonable doubt instruction, and where no other instructions connect the reasonable doubt standard to the charged offense, the omission is reversible error. Although some courts have found the error to be prejudicial under harmless error analysis while others have deemed it structural error, in reality the reasoning and results have been virtually the same.
In Vann, supra, 12 Cal.3d 220, we held that the trial court’s omission of the standard reasonable doubt instruction was prejudicial error. We rejected the prosecution’s argument that the reasonable doubt language in the circumstantial evidence instruction and the good character instruction would necessarily be understood by a jury to generally establish the reasonable doubt standard of proof. (Id. at pp. 226-227.) The court also explained that the trial court’s pre-empanelment instructions to prospective jurors did not cure the error, noting a 16-day gap between the reasonable doubt instruction given to prospective jurors and the end of trial. (Id. at p. 227, fn. 6.) Similarly, statements of counsel did not cure the error because “the court made it clear that the jurors were to follow the law as explained by the court, and were not to follow rules of law stated in argument but omitted from the instructions.” (Ibid.) The court thus concluded under Chapman v. California (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824] that the error was not harmless beyond a reasonable doubt. (Vann, at p. 228.)
People v. Elguera (1992) 8 Cal.App.4th 1214 [10 Cal.Rptr.2d 910] (Elguera) similarly involved an omission of the standard reasonable doubt instruction from the trial court’s predeliberation charge to the jury. The trial court had given the standard instruction to prospective jurors at the start of jury selection; the reasonable doubt standard was repeated during examination of prospective jurors, and each juror said he or she understood it; the circumstantial evidence instruction given to the jury before deliberation referred to the reasonable doubt standard; and the prosecutor and defense counsel mentioned the reasonable doubt standard at least eight times in argument to the jury. (Id. at p. 1221.) Still, the Court of Appeal was “unable to declare [itself] convinced beyond a reasonable doubt the error had no effect on the verdict.” (Id. at p. 1222.) Even though the entire trial, including jury selection, occurred in a single day, the court explained that “the instruction was given not to actual jurors, but to prospective jurors who at the time did not know whether they would ultimately serve in the case. As a result, the members of the panel could well have viewed the court’s remarks as hypothetical and thus have failed to give the instruction the same focused attention they would have had they been impaneled and sworn.” (Ibid.) “[B]ecause the [trial] court made no reference to . . . the general reasonable doubt standard with its charge to the jury after presentation of the evidence, any intellectual awareness the jurors had that the reasonable doubt standard *381 applied may not have been accompanied by the sense of centrality and importance the instruction should carry.” (Ibid.)
In People v. Flores (2007) 147 Cal.App.4th 199 [54 Cal.Rptr.3d 98] (Flores), the trial court did not give the standard reasonable doubt instruction, but it did mention the reasonable doubt standard in instructions pertaining to proof by circumstantial evidence, defendant’s choice not to testify, special statute of limitations findings, and allegations that the defendant committed offenses against more than one victim. (Id. at pp. 216-217.) As to each of those instructions, the court refused to “presume that a reasonable doubt instruction given in a specific context . . . will necessarily be understood by all of the jurors to apply generally to their determination of the defendant’s guilt on all of the charged offenses.” (Id. at p. 216, italics omitted.) The trial court also mentioned the reasonable doubt standard during jury selection. But, as in Vann and Elguera, the court found it “unreasonable to expect prospective jurors, who have yet to be empanelled and sworn as actual jurors in the trial, to give the necessary attention and weight to instructions given by a trial court during jury selection.” (Id. at p. 215.) In addition, the court explained that the prosecutor’s discussion of the reasonable doubt standard during closing argument did not effectively inform the jury of that standard in light of the trial court’s instruction that the jury must follow the law as stated by the court. (Id. at p. 218.) “In short,” the court concluded, “we cannot say the trial court’s error was harmless beyond a reasonable doubt.” (Id. at p. 219.)
In Crawford, supra, 58 Cal.App.4th 815, the Court of Appeal held that the failure to give a standard reasonable doubt instruction was structural error. (Id. at pp. 821-823.) But the court went on to explain that even if harmless error analysis applied, the instructional omission was not harmless. (Id. at pp. 824—825 [references to proof beyond a reasonable doubt in preempanelment instructions and in instructions on specific matters did not cure the failure to give the standard instruction].) Similarly, in People v. Phillips (1997) 59 Cal.App.4th 952 [69 Cal.Rptr.2d 532], the court held that omission of the standard reasonable doubt was structural error, while also rejecting the prosecution’s contention that arguments of counsel and other instructions relating to reasonable doubt rendered the omission harmless. (Id. at pp. 956-958.)
There is one case in which a court found that omission of the standard reasonable doubt instruction was not prejudicial error and, indeed, not federal constitutional error at all. In People v. Mayo (2006) 140 Cal.App.4th 535 [44 Cal.Rptr.3d 497], the Court of Appeal held that omission of the standard instruction does not constitute federal constitutional error if the jury is otherwise instructed on the requirement of proof beyond a reasonable doubt in connection with the charged offense. (Id. at pp. 548-549.) In Mayo, a *382 murder case, the trial court failed to give the standard instruction, but other instructions made clear that as to the murder charge and lesser included offenses, the prosecution had the burden of proving each element beyond a reasonable doubt. (Id. at pp. 545-546.) The court distinguished Vann, Crawford, Phillips, and Elguera on the ground that the instructions in those cases “did ‘fall far short’ of informing the jury it had to acquit unless it found each and every element of the charged offense beyond a reasonable doubt.” (Id. at p. 546.) Mayo makes clear that despite a trial court’s failure to give a standard reasonable doubt instruction, a defendant has not been denied “the right to a jury verdict of guilt beyond a reasonable doubt” (Sullivan, supra, 508 U.S. at p. 281)—and no federal constitutional error has occurred—when the instructions given by the trial court otherwise informed the jury of its obligation to apply the reasonable doubt standard to the charged offense.
From this review of the case law, two points emerge. First, California courts have not been entirely consistent in their doctrinal approach to analyzing the significance of a trial court’s omission of the standard reasonable doubt instruction. Crawford and Phillips said the omission is structural error. Vann, Elguera, and Flores said the omission itself is federal constitutional error, and those courts then asked whether the error was prejudicial by examining whether the instructions given by the trial court or the arguments of counsel adequately informed the jury of the correct standard of proof for the charged offense. Mayo said that omission of the standard reasonable doubt instruction is not, in and of itself, federal constitutional error; it is only error when the instructions given by the trial court do not otherwise inform the jury that the prosecution must prove each element of the charged offense beyond a reasonable doubt.
Today’s opinion clarifies “the proper inquiry with regard to determining the federal constitutional implications of the trial court’s failure to include the standard reasonable doubt instruction in its predeliberation instructions to the jury.” (Maj. opn., ante, at p. 358.) The court says “the omission of the standard reasonable doubt instruction will amount to a federal due process violation when the instructions that were given by the court failed to explain that the defendants could not be convicted ‘unless each element of the crimes charged was proved to the jurors’ satisfaction beyond a reasonable doubt.’ (Vann, supra, 12 Cal.3d at p. 227.) When the trial court’s instructions otherwise cover this constitutional principle, the failure to instruct with the standard reasonable doubt instruction does not constitute federal constitutional error.” (Maj. opn., ante, at p. 358.) Thus, consistent with Mayo, the court today holds that omission of the standard reasonable doubt instruction does not itself constitute federal constitutional error. A reviewing court must ask whether “the trial court’s instructions otherwise cover this constitutional principle . . . .” (Ibid.) Only when the trial court’s instructions do not *383 otherwise connect the reasonable doubt standard to the charged offense does omission of the standard instruction amount to federal constitutional error.
In light of today’s doctrinal clarification, it is readily apparent that most of the analysis that the cases above had categorized as “harmless error” inquiry—in particular, whether pre-empanelment or other instructions given by the trial court compensated for the omission of the standard reasonable doubt instruction—is now properly understood as an inquiry into whether a federal constitutional error occurred at all. Under today’s decision, a proper finding of federal constitutional error subsumes a finding that other instructions given by the trial court did not adequately convey to the jury the applicability of the reasonable doubt standard to the charged offense. Importantly, as discussed more fully below, this means that even if such error is amenable to harmless error analysis, a finding of error will almost invariably lead to reversal. That is because there is very little that other components of a trial, such as the arguments of counsel, can do to compensate for the failure of a trial court’s instructions, singly and collectively, to inform the jury of the correct standard of proof for the charged offense.
A second observation from the prior cases is that despite varying doctrinal approaches, and despite factual differences from case to case, our courts have been consistently and highly skeptical of arguments that purport to show why omission of the standard reasonable doubt instruction does not warrant reversal. No court has found much relevance in statements of counsel, given the obvious authority of the trial judge in the courtroom. No court has put much stock in pre-empanelment instructions, even when they repeatedly mention the reasonable doubt standard, because prospective jurors who do not know whether they will actually serve on a jury cannot realistically be thought to pay focused attention to the trial court’s instructions, and because the lapse of time between jury selection and deliberation erodes any impact such instructions might have. In addition, no court has found references to the requirement of proof beyond a reasonable doubt in other predeliberation instructions to be an adequate substitute for the standard instruction, unless those instructions expressly connect the reasonable doubt standard to the charged offense, as in Mayo. In sum, no California case has ever held that a trial court’s failure to give the standard reasonable doubt instruction or any other instruction connecting the requirement of proof beyond a reasonable doubt to the charged offense constitutes anything but reversible error.
Against this landscape of precedent, it is no wonder that the Attorney General’s answer brief on the merits said she “acknowledges that the instructions did not adequately convey the concept of reasonable doubt to the jury with regard to the street terrorism conviction, and is not challenging the reversal of that count.” Yet this court, on its own initiative, has decided to *384 break new ground by finding the instructional error harmless. This conclusion, as I now explain, is contrary to precedent, common sense, and other parts of this court’s own opinion.
II.
At the close of evidence and argument in this case, the trial court first instructed the jurors with CALJIC No. 1.00, which states in part: “You have heard all the evidence . . . and now it is my duty to instruct you on the law that applies to this case. You will have these instructions in written form in the jury room to refer to during your deliberations.” The instruction further stated: “You must accept and follow the law as I state it to you, regardless of whether you agree with it.” The trial court’s predeliberation instructions then included nine instructions related to the murder count and lesser included offenses and enhancements, each of which mentioned the requirement of proof beyond a reasonable doubt. The trial court did not give the jury a reasonable doubt instruction on the gang offense, nor did the trial court give the standard reasonable doubt instruction.
A.
Applying the proper inquiry for determining whether the trial court’s omission of the standard reasonable doubt instruction amounted to federal constitutional error, the court holds that no error occurred “with regard to the voluntary manslaughter conviction because the court’s instructions on murder and its lesser included offenses clearly connected the reasonable doubt standard to the voluntary manslaughter offense.” (Maj. opn., ante, at p. 361.) The court then says: “The same cannot be said concerning the count charging defendant with active participation in a criminal street gang in violation of section 186.22, subdivision (a), however, because neither the instruction on the elements of that offense nor any other instruction given by the court connected the reasonable doubt standard of proof to that charge.” (Ibid.)
In support of the latter holding, the court observes that the instruction stating the elements of the gang offense “did not explain that the prosecution must prove each of those elements beyond a reasonable doubt.” (Maj. opn., ante, at p. 361.) In addition, “[t]he circumstantial evidence instruction did not adequately cover the principle that defendant could be convicted of the gang offense only if the prosecution proved his guilt of the gang offense beyond a reasonable doubt.” (Id. at p. 362.) Further, although the trial court mentioned the reasonable doubt standard in its instruction on the gang enhancement allegation, “the reference to the reasonable doubt standard was contained in an instruction concerning a sentencing allegation associated with the murder *385 charge, an entirely different count.” (Id. at pp. 361-362.) Indeed, none of the trial court’s nine predeliberation instructions that specifically referred to the reasonable doubt standard connected that standard to the gang offense, for the court concludes that “the [trial] court’s instructions did not otherwise cover the requirement that the prosecution prove defendant’s guilt of the gang offense beyond a reasonable doubt.” (Id. at p. 362.) Finally, in a footnote, the court adds that the trial court’s pre-empanelment instructions to prospective jurors, which repeatedly mentioned the reasonable doubt standard, were not “an adequate substitute for the court’s duty to instruct the jurors prior to deliberation on the principle of proof beyond a reasonable doubt.” (Id. at p. 362, fn. 11.)
At this point in the analysis, the court has determined that neither the pre-empanelment instructions nor any other instructions given by the trial court adequately conveyed to the jury the applicability of the reasonable doubt standard to the gang offense. That is the basis of the court’s finding of federal constitutional error. To the extent this instructional error is subject to harmless error analysis, one would expect such analysis to focus on whether aspects of the trial other than instructions given by the trial court effectively compensate for the inadequacy of the trial court’s instructions. On the record before us, that inquiry would be short and simple. As the court acknowledges, the only potentially relevant circumstance is that “neither the prosecutor nor defense counsel referred to the standard of proof during closing remarks” and “nothing in counsel’s arguments would have misled the jury to believe it should adjudge defendant’s guilt of the gang count under a standard of proof less than beyond a reasonable doubt.” (Maj. opn., ante, at p. 370.) That is true. But it is equally true that nothing in counsel’s arguments would have led the jury to believe it should adjudge defendant’s guilt of the gang count under the reasonable doubt standard. Counsel’s silence can hardly render the instructional error harmless beyond a reasonable doubt.
The court correctly notes that the issue of reversibility in this, context does not depend on the strength of the case against a defendant. (Maj. opn., ante, at p. 368.) So what is left for the court to do in its harmless error analysis? Perplexingly, the court answers this question by focusing its harmless error analysis on a second look at whether the instructions given by the trial court adequately informed the jury of the reasonable doubt standard—the same inquiry the court posed earlier to determine whether the instructional omission amounted to federal constitutional error. Even more baffling, this “do-over” leads the court to a conclusion contrary to the one it reached just a few pages earlier.
First, the court says the “nine instructions in connection with the murder count” left no reasonable possibility that the jury failed to apply the reasonable doubt standard in finding defendant guilty of the gang offense. (Maj. *386 opn., ante, at p. 369; see ibid. [“We find it unrealistic, in light of the given instructions, that the jurors would have believed the prosecution was required to prove defendant’s guilt of murder or its lesser offenses beyond a reasonable doubt but that it had no burden, or a burden less than . beyond a reasonable doubt, to prove his guilt of the gang offense.”].) The court says these murder-related instructions “in particular” support a finding of harmless error. (Id. at p. 373.)
These statements take the reader by surprise in light of the court’s prior conclusion that “the [trial] court’s instructions did not otherwise cover the requirement that the prosecution prove defendant’s guilt of the gang offense beyond a reasonable doubt.” (Maj. opn., ante, at p. 362.) How can the court say that the only “realistic” or “reasonably possible” inference from the murder-related instructions was that the reasonable doubt standard also applied to the gang offense when the court’s finding of constitutional error rejects the necessity of that very inference? The court’s harmless error analysis flies in the face of its earlier reasoning that the murder-related instructions were insufficient to convey the applicability of the reasonable doubt standard to the gang offense because “the murder charge [was] an entirely different count.” (Ibid.) The court provides no justification for retreating from its own recognition, supported by ample precedent, that “it cannot be presumed ‘that a reasonable doubt instruction given in a specific context . . . will necessarily be understood by all of the jurors to apply generally to their determination of the defendant’s guilt on the charged offenses.’ ” (Id. at p. 359, quoting Flores, supra, 147 Cal.App.4th at p. 216; see Vann, supra, 12 Cal.3d at pp. 226-227; Crawford, supra, 58 Cal.App.4th at pp. 824-825; Elguera, supra, 8 Cal.App.4th at p. 1218.)
Second, the court notes that the trial court’s preempanelment instructions to prospective jurors “repeatedly explained the connection between the charged crimes and the reasonable doubt standard.” (Maj. opn., ante, at p. 372; see ibid. [“Thus, in this case, the court undertook extensive effort during jury selection to impress upon the prospective jurors the meaning, application, and magnitude of the beyond a reasonable doubt standard of proof, and it painstakingly elicited from the prospective jurors their understanding and acceptance of that principle.”].) But the court is aware that “no decision has viewed instructions and remarks at this stage of the proceedings as an adequate substitute for the court’s duty to instruct the jurors prior to deliberation on the principle of proof beyond a reasonable doubt” and that substantial precedent has found it “ ‘unreasonable to expect prospective jurors ... to give the necessary attention and weight to instructions given by a trial court during jury selection.’ ” (Id. at p. 362, fn. 11, quoting Flores, supra, 147 Cal.App.4th at p. 215; see Vann, supra, 12 Cal.3d at p. 227, fn. 6; Crawford, supra, 58 Cal.App.4th at p. 824; Elguera, supra, 8 Cal.App.4th at p. 1217.)
*387 In light of this precedent, the court attempts to finesse the relevance of the pre-empanelment instructions by saying they are “of lesser significance” than instructions given at trial but nonetheless “provide some support” for the court’s finding of harmless error. (Maj. opn., ante, at p. 371.) But having concluded that the same “extensive” and “painstaking^” pre-empanelment instructions, along with the nine murder-related instructions that specifically mentioned reasonable doubt, do not show that the trial court’s instructions “otherwise cover[ed] the requirement that the prosecution prove defendant’s guilt of the gang offense beyond a reasonable doubt” (id. at p. 362), how can the court now say that the preempanelment instructions “provide some support for our conclusion that there is no reasonable possibility that the jury’s verdict on the gang count was not based on a finding of guilt beyond a reasonable doubt” (id. at p. 371)? I do not see how these two holdings can be reconciled. If it is “ ‘unreasonable to expect prospective jurors ... to give the necessary attention and weight to instructions given by a trial court during jury selection’ ” (id. at p. 362, fn. 11), and if the unreasonableness of that expectation supports the court’s finding of federal constitutional error, then why should remarks to prospective jurors now be regarded as a relevant factor, even “of lesser significance,” in harmless error analysis? Given the 14-day gap between jury selection and deliberations in this case, it is questionable whether the jurors even recalled those remarks.
B.
The obvious inconsistency between the court’s harmless error analysis and its rationale for finding federal constitutional error reveals how mightily the court must strain to avoid a far more simple, straightforward, and legally supportable conclusion: It was reasonably possible that the jury did not apply the reasonable doubt standard in convicting defendant of the gang offense.
In light of the trial court’s instructions and omissions, it is certainly possible, as the court posits, that a reasonable juror would have inferred that the reasonable doubt instruction given in connection with the murder count also applied to the gang offense. But it is also possible that a reasonable juror, noting the discrepancy, would have concluded that the reasonable doubt standard did not apply to the gang offense. Given the regularity with which courts employ the maxim expressio unius est exclusio alterius, why is it not reasonably possible—especially because the trial court mentioned the reasonable doubt standard in nine separate instructions pertaining to murder, but not once in any instruction pertaining to the gang offense—that the jury would have understood that the reasonable doubt standard applied only to the murder count and not to the gang offense?
Indeed, the possibility that the jury followed the trial court’s instructions literally and did not apply the reasonable doubt standard to the gang offense *388 is consistent with the principle that “the jury is presumed to follow the trial court’s instructions.” (People v. Fuiava (2012) 53 Cal.4th 622, 669 [137 Cal.Rptr.3d 147, 269 P.3d 568].) This well-established presumption is based on the notion that sworn jurors, thrust into an unfamiliar courtroom environment and charged with the solemn responsibility of deciding whether a person should be convicted of a crime, will follow the specific instructions of the person in authority, the trial judge. The possibility that the jury did not follow the trial court’s instructions literally and instead drew “logical” or “realistic” inferences from those instructions (maj. opn., ante, at pp. 369-370) is not consistent with this presumption.
The fact that “none of the court’s instructions at trial referred to a lesser standard of proof such as preponderance of the evidence or clear and convincing evidence” (maj. opn., ante, at p. 369) provides little reassurance. Even if the jurors did not consciously infer a standard of proof less than the reasonable doubt standard, there is another reasonable possibility: The jurors may not have considered or made any inferences about the standard of proof at all with respect to the gang offense. We have no reason (and no legal basis) to presume that a reasonable juror will remedy the absence of any standard of proof instruction by using inferential reasoning. Just as likely, inadequately instructed jurors may simply pay no attention to the standard of proof, instead substituting whatever standard seems intuitively right, as I suspect most lay people would do if asked whether they believed that a particular fact had been adequately proven. There is no reason to think that a question like, “Was the defendant an active participant in a street gang?” will necessarily cause jurors to ponder (much less correctly answer) the question “under what standard of proof?”
In any event, whether or not the jurors noticed the instructional omission, whether they thought the omission was intentional, inadvertent, or erroneous, it would have been perfectly reasonable for the jury to follow the trial court’s initial admonition to “accept and follow the law as I state it to you, regardless of whether you agree with it.” (CALJIC No. 1.00, italics added.) There is nothing unreasonable about the possibility that the jury did not apply the reasonable doubt standard- in convicting defendant of the gang offense.
C.
The court’s remaining arguments to the contrary are not persuasive. The court relies on People v. Cowan (2010) 50 Cal.4th 401 [113 Cal.Rptr.3d 850, 236 P.3d 1074] (Cowan) to argue that “ ‘the most logical response’ by the jury to the absence of instruction specifically linking the reasonable doubt standard to the gang offense count would have been to conclude that a guilty verdict on that charge was subject to the same reasonable doubt standard that *389 had been described in the court’s instructions on murder, the lesser offenses, and the sentencing allegations.” (Maj. opn., ante, at p. 370, quoting Cowan, at p. 492.) But Cowan is easily distinguished.
In Cowan, a death penalty case, the jury hung as to the Russell murder with which the defendant was charged, but found the defendant guilty of two other murders. At the penalty phase, the jury was instructed with the statutory list of aggravating and mitigating factors, including “ ‘the presence or absence of criminal activity by the defendant other than the crimes for which the defendant has been tried in the present proceedings, which involved the use or attempted use of force or violence, or the express or implied threat to use force or violence.’ ” (Cowan, supra, 50 Cal.4th at p. 488, italics added, quoting § 190.3, factor (b).) The jury was further instructed with a modified version of CALJIC No. 8.87, stating that evidence had been introduced of three other criminal acts (a robbery, a burglary, and child abuse) and that “ ‘[b]efore a juror may consider any of such criminal acts as an aggravating circumstance in this case, a juror must first be satisfied beyond a reasonable doubt that the defendant did, in fact, commit such criminal acts. A juror may not consider any evidence of any other criminal acts as an aggravating circumstance.’ ” (Cowan, at p. 488.)
Based on a portion of testimony the jury asked to be read back during deliberations, there was some indication that the jury was improperly considering the Russell murder as a criminal act in aggravation. On appeal, the defendant argued that the trial court had a sua sponte duty to instruct that the Russell murder could not be considered unless the jurors were convinced of defendant’s guilt of that murder beyond a reasonable doubt.
In rejecting the defendant’s contention that the failure to so instruct was prejudicial error, we found it unlikely that the jury was considering the Russell murder as a crime in aggravation because the jury was instructed that crimes in aggravation could only include “criminal activity ‘other than the crimes for which the defendant has been tried in the present proceedings’ ” and because the Russell murder was not included in the exclusive list of crimes in aggravation given to the jury. (Cowan, supra, 50 Cal.4th at p. 491.) We went on to explain that even if the jurors had improperly considered the Russell murder for that purpose, it was “extremely unlikely that individual jurors then believed they could consider the Russell murder as an aggravating factor even if it had not been proved beyond a reasonable doubt. Rather, the most logical response to the absence of a specific instruction would have been to conclude that the Russell murder was subject to the same reasonable doubt standard as the other criminal activity included in the instruction based on CALJIC No. 8.87.” (Id. at p. 492.)
*390 Thus, in Cowan, the only way the jury could have failed to apply the reasonable doubt standard to the Russell murder was by doubly disobeying the trial court’s instructions—first, by improperly considering the Russell murder as a crime in aggravation, and second, by ignoring the instructions given by the trial court for considering crimes in aggravation, including the requirement of certainty beyond a reasonable doubt. Unsurprisingly, we found that scenario “extremely unlikely.” (Cowan, supra, 50 Cal.4th at p. 492.) Here, by contrast, the jury could have concluded that the reasonable doubt standard did not apply to the gang offense, not by ignoring or disobeying the trial court’s instructions, but by literally following them. (See ante, at p. 388.)
Next, the court attempts to distinguish Vann and the line of Court of Appeal cases finding reversible error by observing that “[i]n no case . . . did the court’s instructions convey that the prosecution bore the burden of proving guilt of any of the crimes of which the defendant was convicted.” (Maj. opn., ante, at p. 370.) “By contrast in this case,” the court says, the jury convicted defendant of voluntary manslaughter after being “informed through a number of predeliberation instructions that to convict defendant of the charged murder or any of its lesser included offenses, it must find him guilty of the offense beyond a reasonable doubt.” (Ibid.) But this purported distinction does not make it any more likely that the jury applied the reasonable doubt standard to the gang offense. As the court says elsewhere, because the “murder charge [was] an entirely different count” (id. at p. 362), the possibility that the murder-related instructions “connected the requisite standard of proof to the gang offense is even more dubious here” (id. at p. 361, italics added) than in other cases where “it cannot be presumed ‘that a reasonable doubt instruction given in a specific context. . . will necessarily be understood by all of the jurors to apply generally . . .’ ” (id. at p. 359, quoting Flores, supra, 147 Cal.App.4th at p. 216).
Finally, in an effort to buttress its reliance on the trial court’s preempanelment instructions, the court says “the present case differs from Vann . . .” because there “the trial court ended its predeliberation instructions by informing the jurors that they ‘ “have been instructed on all the rules of law that may be necessary for you to reach a verdict,” ’ ” thereby “suggesting] to the jurors that the predeliberation instructions were ‘a self-contained, complete statement of the law they were to follow.’ ” (Maj. opn., ante, at p. 373, quoting Vann, supra, 12 Cal.3d at p. 227, fn. 6.) “Here, by contrast, the trial judge instructed the jury only that it must ‘accept and follow the law as I state it to you.’ (See CALJIC No. 1.00.) Nothing in this directive would have led the jurors to believe they must ignore the court’s explications of the prosecution’s burden of proof given during jury selection.” (Maj. opn., ante, at p. 373.) Further, the court notes that the trial court said “[a]t the outset of *391 trial” that “ ‘all of the Court’s instructions, whether given before, during, or after the taking of testimony, are of equal importance.’ ” (Ibid.)
But the trial court’s introductory admonition at the outset of predeliberation instructions to “accept and follow the law as I state it to you” (italics added) contains no less a representation of completeness than the concluding instruction in Vann. Moreover, as for the trial court’s statement that “all of the Court’s instructions ... are of equal importance,” here is a more complete quotation of what the trial court said: “I shall now instruct you as to your basic functions, duties and conduct. At the conclusion of the case, I will give you further instructions on the law. All of the Court’s instmctions, whether given before, during or after the taking of testimony, are of equal importance.” This statement was made after the jurors had been selected and sworn, and it refers to instructions given from that point on (“I shall now instruct you . . . .”), not to prior statements the trial court made to prospective jurors. For reasons already discussed, the trial court’s instructions during jury selection have minimal import in curing the instructional omission at issue here. And the trial court’s statements after the jurors had been selected and sworn would have done nothing to focus the attention of prospective jurors.
III.
The principle that a person may not be convicted of a crime unless proven guilty beyond a reasonable doubt may be part of the general knowledge that jurors bring to the deliberation room, whether instilled by civic education or by watching Law & Order. But this kind of general knowledge is insufficient to ensure that the jury discharges its obligation properly. Instead, our justice system requires trial courts to instruct the jury on the reasonable doubt standard “after the presentation of evidence” so that the burden is placed “at center stage for consideration during deliberations.” (Crawford, supra, 58 Cal.App.4th at p. 825, italics omitted.) “ ‘No instruction could be more vital . . . , since in every criminal case it directs the jury to put away from their minds [sic] all suspicions arising from arrest, indictment, arraignment, and the appearance of the accused before them in his role as a defendant.’ [Citation.]” (Vann, supra, 12 Cal.3d at p. 227.) As one Court of Appeal put it: “If any phrase should be ringing in the jurors’ ears as they leave the courtroom to begin deliberations, it is ‘proof beyond a reasonable doubt.’ ” (Elguera, supra, 8 Cal.App.4th at pp. 1222-1223.)
In this case, the court properly holds that the trial court’s omission of the standard reasonable doubt instruction, along with the absence of any other instructions that connected the reasonable doubt standard to the gang offense, was federal constitutional error. But instead of affirming the uncontested reversal of defendant’s conviction on that count, today’s opinion reaches out *392 to decide an issue that no party asked us to decide. In deciding that issue, the court contravenes precedent, common sense, and its own opinion. Whether or not an instructional error of this sort is properly subject to harmless error analysis, no harmless error can be found on the record before us. How can we be certain beyond a reasonable doubt that the jurors who convicted defendant of the gang offense gave focused attention to the correct standard of proof when they were not instructed on this standard either generally or specifically with respect to that offense? Simply put, we cannot.
Consistent with all California cases that have considered whether inadequate instruction on the requirement of proof beyond a reasonable doubt is reversible error, I would affirm the Court of Appeal’s reversal of defendant’s conviction on the gang offense. In all other respects, I join the opinion of the court.